[Civ. No. 8146. Third Dist. Oct. 6, 1952.]

JAMES W. KING, Respondent, v. EVELYN M. HAWLEY et al., Appellants.

Blewett, Blewett, Macey & Garretson for Appellants.

Mazzera, Snyder & DeMartini for Respondent.

VAN DYKE, J.—E. O. Sylvester died August 13, 1946. His surviving sister, Ida M. Graves, was appointed executrix of his will and as such administered his estate. His will, executed April 7, 1942, disposed of his estate in the following language: "I devise and bequeath all my property to my sister, Mrs. Ida M. Graves of Stockton, California, and request that she be appointed sole executrix of my will, and that she may not be compelled to give any bond or security as such executrix, and that she may settle the estate in her own way and sell any or all of the real or personal estate at public or private sale as she may think best, and that she

may use all the proceeds of my estate for her comfort and support; but that whatever may be left of my estate at her death shall go to James Woodward King of Sacramento, California, and to his heirs.'' The decree of distribution, made September 15, 1947, provided ''That the residue of said estate . . . be and the same is hereby distributed as follows: All thereof to Ida M. Graves, with the right to sell or otherwise dispose of the same or any part thereof during her lifetime for her comfort and support; but whatever may be left at her death to James Woodward King.'' Ida M. Graves died May 28, 1949. During the time intervening between Sylvester's death and her own she had by a series of transactions, some occurring during the probate of the estate of Sylvester, and some after the decree of distribution was made, disposed of all of the property which Sylvester owned when he died and of the proceeds thereof, save possibly a bank deposit of $10,000, which may have been money paid to her upon the sale of real property. In the main these transactions resulted in the acquisition by defendants Evelyn M. Hawley and G. W. Graves of the Sylvester properties. Claiming that he was a remainderman under the decree of distribution in the estate of Sylvester and that these transactions whereby, with the possible exception of the said bank deposit, his claimed inheritance had been diverted, were the product of a fraudulent conspiracy on the part of Evelyn M. Hawley, G. W. Graves, one John T. Ward and Ida M. Graves to cheat and defraud him of that inheritance, respondent King brought action to quiet title in himself to certain property held by Evelyn M. Hawley and which had devolved from the estate of Sylvester. The trial court held these charges of fraud to be well founded and decreed that plaintiff was the owner of the following property: A promissory note executed by Odd Fellows Recreation Association in the principal sum of $45,000 upon which there was a balance unpaid of $35,000, the payment of which was secured by a deed of trust upon real property in Tuolumne County consisting of approximately 700 acres of land which had been owned by Sylvester when he died; a fund of $10,000 theretofore paid upon the principal of the same note and being held at the time of judgment in escrow by an abstract and title company in Sonora; the sum of $10,000 which had been deposited by Ida M. Graves with the Morris Plan Company of Stockton, California, and which stood in her name at her death; a promissory note executed by Lynn and Marguerite Lawrence in

the principal sum of $3,000 on which there was a balance due of $1,450, payment of which was secured by deed of trust upon about an acre of ground which had been part of the Tuolumne County property; approximately 40 acres of land standing in the name of Evelyn M. Hawley which had been also a part of the Tuolumne County property. The court further decreed that respondent King recover from Evelyn M. Hawley the sum of $1,550 which had been paid to her upon the $3,000 note above referred to.

From this judgment Evelyn M. Hawley and G. W. Graves appeal and contend as follows: 1. By the will of Sylvester and the decree of distribution made in the matter of his estate there was conveyed to Ida M. Graves a fee interest and not a mere life estate. 2. If it be true the will and decree vested only a life estate in Ida M. Graves with remainder over to respondent James Woodward King, then the various dispositions she made of the Sylvester properties involved come within the powers given to her to dispose of and to use these properties for her "comfort and support." 3. The court erred in rejecting certain offered testimony, hereinafter more specifically referred to. 4. The court erred in admitting evidence of transactions in the estate of Sylvester participated in by appellants Evelyn M. Hawley and George W. Graves but which were wholly unrelated to the matters in issue before the court. 5. The court erred in adjudging King was entitled to the $10,000 purchase money which Evelyn M. Hawley was shown to have paid for the Tuolumne County land. Generally, appellants contend that the evidence as a whole is insufficient to support the essential findings and the judgment of the trial court.

Taking up first appellants' contentions as to the proper construction to be placed upon the provisions of Sylvester's will as construed by the probate court in its decree of distribution, we hold that thereby there was vested in Ida M. Graves an estate for life with remainder over to respondent; that she was given a full right to use the property for her comfort and support and to that end could fully consume it and for that purpose could sell it and use the proceeds of such disposition, but, again, for her comfort and support. We hold further that in the exercise of the power of consumption, use and disposition, she was limited to the purpose for which the property was given to her, that is, her use and consumption for her comfort and support, and that she could not give the property away during her lifetime nor will it

away at her death. Although she had a broad right to adapt the property to the purposes for which she received it, the right was not unlimited and she was charged in respect of her handling of the property with an affirmative duty to exercise her undoubted broad rights of use and consumption with due regard for the rights of the respondent, the remainderman, a duty which may be said to have been in the nature of a trust. (*Luscomb* v. *Fintzelberg,* 162 Cal. 433 [123 P. 247] ; *Adams* v. *Prather,* 176 Cal. 33 [167 P. 534] ; *Hardy* v. *Mayhew,* 158 Cal. 95 [110 P. 113, 139 Am.St.Rep. 73].) In *Adams* v. *Prather, supra,* the will provided that all of the property of the testatrix was given to her husband with power to sell without order of court. Thus far the devise was in absolute terms, but the will provided further that upon the death of the husband one-half of the "unexpended portion" should go to a niece of the testatrix and the other half to other relatives. The Supreme Court said (page 37) :

" 'A will is to be construed according to the intention of the testator' (Civ. Code, sec. 1317), and that 'intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made' (Civ. Code, sec. 1318), which words, in the absence of a clear intention to use them otherwise, 'are to be taken in their ordinary and grammatical sense' (Civ. Code, sec. 1324). Unless irreconcilable, 'all the parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole.' (Civ. Code, sec. 1321.) Applying these rules, *and having in mind that 'a clear and distinct devise or bequest cannot be affected . . . by any other words not equally clear and distinct* [italics ours] (Civ. Code, sec. 1322), we find no difficulty in arriving at the intention of Julia P. A. Prather as expressed in her will. In disposing of her property she recognized her husband as being first entitled to consideration, but in providing for him she gave expression to the thought of her nieces, particularly the one who bore her name, Julia. While the first dispositive clause of the will, namely, 'I give all the property of which I die possessed to my husband Thomas Prather . . . ,' is clear and, taken alone, admits of no construction other than that an absolute disposal of her estate to him was intended, the second dispositive clause, to wit, 'Upon the death of my husband the said Thomas Prather one-half of the unexpended portion of my estate bequeathed to my husband to be given to my niece Julia Adams . . . , the other one-half to be given to the surviving

daughters of my brother Edson F. Adams in equal shares,'
is equally clear and distinct. (*Estate of Tooley,* 170 Cal. 164,
[Ann.Cas. 1917B 516, 149 P. 574].) Hence, unless irrecon-
cilable with the first clause, it should be construed in relation
therewith. Read in connection with the first clause, it is clear
that in using the words, 'unexpended portion of *my estate,*'
she had reference to that portion of *her estate* which should
remain unconsumed by her husband at his death, and this
part of her estate so remaining was, by the terms of the will,
addressed not to her husband as legatee, but to the executor
of her will, 'to be given' in the manner provided by law to
her nieces. Thus addressed to the executor the words were
not precatory in character but are words of command. (*Estate
of Marti,* 132 Cal. 666, [61 P. 964, 64 P. 1071].) . . . Her
intention was to limit *the estate given the husband to such
part thereof only as he might in his lifetime expend, consume,
or make use of, without in any manner restricting him in the
control and disposition thereof for such uses.* [Italics ours.]
Subject to such control and disposal for his use and con-
sumption to its complete exhaustion, it was Julia's estate,
and, after such carving therefrom as the husband might make
for his use and consumption, the portion, if any, remaining
at his death and designated by Julia as *'the unexpended
portion of my estate'* she made the subject of testamentary
disposition, directing it *'to be given'* not by her husband, who
as we have seen had no interest therein, but by her executor
and the law to the nieces mentioned. The meaning of the
second clause of the will, when viewed in connection with
the first, in our opinion is as clear and distinct as any other
part of the will, and thus construed in relation to the first,
effect is given to both and the intention of the testatrix made
clear.''

We proceed to the second contention of appellants, which
is that, conceding a vesting in Ida M. Graves of a life estate
with limited powers of disposition and in respondent King
a vested remainder, yet the disposition made by the life
tenant of the property which she received was within the
scope of her power to dispose of and use the property for her
''comfort and support.'' We will consider first the meaning
which the law attaches to the words ''comfort and support''
as limiting the right or power of Ida M. Graves in the dis-
position, use and consumption of the property of which she
became a life tenant. It is elementary that a donee of the
life estate may make only such disposition and use of the

property he receives as is fairly authorized by the grant and consistent with the purposes thereof. In this case the grant of power, while tersely expressed in the decree of distribution, is nevertheless clear. Ida M. Graves had the power to sell or otherwise dispose of the Sylvester estate property received by her for her comfort and support. We think the language found in 69 Corpus Juris, "Wills," section 1943(b) discloses the scope and extent of such a power as was here given to Mrs. Graves and we adopt and approve the following therefrom:

"The scope and extent of a testamentary power of sale or disposition depend largely on the provisions included in the will creating and conferring the power with respect to the purpose for which the power is given, or the circumstances in which it is to be exercised. Where the power is a limited one, it may be exercised only in good faith, and strictly within its limits, and the donee can do nothing, by way of exercise of the power, that is not authorized by the will; . . .

"A power to use, consume, or expend property for the support or maintenance of the donee, or of another, authorizes only such sales, or such encroachments upon the property, as are necessary and proper for his reasonable support and maintenance, taking into consideration his position in life, the style and manner in which he maintains himself, his state of health, and the like, and gives the donee no power of disposition for any other purpose, and no authority to dispose by will or otherwise of the unconsumed portion of the property, even though he claims it all in his lifetime or attempts to transfer it to himself. The power may, however, be exercised by a transfer or conveyance of the property, in good faith, for the consideration of life support and care of the donee of the power by the grantee or transferee, or, in a proper case, where the power is given for the support or maintenance of another than the donee, by a conveyance of the property to such other. . . .

"A power to consume or dispose of property for the donee's 'benefit' is broader than one for his support or maintenance, and, in general, includes whatever promotes his personal prosperity and happiness, so that he may consume or sell the property as he chooses, without limitation except that of good faith. *Likewise, a power of sale or disposition for the donee's 'comfort' is broader than one for his maintenance, and encroachment on the property is not restricted to the necessaries of life, but may include things which bring ease,*

*contentment, or enjoyment to the donee,* and, in general, such a power authorizes the expenditure of the property or its proceeds for any purpose, consistent with the donee's former manner of living and station in life, and taking into consideration the value of the property, which the donee thinks will give him personal comfort. So it has been said that, so long as the donee does not deplete the estate for the mere purpose of defeating the testator's intention, or of preferring certain heirs or remaindermen over the others, the courts will be slow to condemn expenditures as not within such a power. The donee must, however, act honestly and in good faith, and a transfer with intent not to consume the property for himself, but to preserve it for others after his death, and thereby to change the beneficiaries, after him, from the remaindermen chosen by the testator to those of the donee's own selection, is a fraud on the testator and the power. *Moreover, a power of disposal for the donee's benefit, or comfort, is exercisable only for his personal benefit, or personal comfort, by the application of the property or its proceeds to, primarily, his physical comfort and ease, and not for the benefit or comfort of another; and while it includes, to a limited extent, his mental comfort, such power does not authorize a transfer or disposition for the donee's mere mental satisfaction, or peace of mind, such as a gift to his children, so that they may have the property after him, instead of the remaindermen designated by the testator, or a gift to a church, charity, or public institution."* (Italics ours.)

In applying the foregoing rules to a questioned disposition or use under the power given the issues generally will be mixed issues of law and fact. An issue of fact may well develop as to whether in truth a disposition, use or consumption was truly one for the comfort or support of the donee of the power and if that be the case then the conclusion of the trier of fact would be binding upon courts of review. So the basic intent with which a transfer or disposition is accomplished may justify a factual finding that there was no true exercise of the power but a deliberate violation thereof for the purpose of defeating the remainderman and depriving him of his rights. With this summary of the applicable rules we proceed to a statement of the facts shown at the trial, bearing in mind of course that the trial court has found that the dispositions of the property made by the donee, Ida M. Graves, were in fact not done or intended for her comfort or support within the proper meaning of those terms,

but were done and intended on the contrary in violation of the power and for the purpose of defeating and defrauding respondent.

It appeared that Sylvester and appellant G. W. Graves, who up to the time of her death was the husband of Ida M. Graves, had been lifetime friends and associates, partners in many business ventures. When Sylvester died they owned and were operating in partnership real property in San Joaquin County. Sylvester and Mrs. Graves were brother and sister and there existed long sustained affection, one for the other. Appellant Evelyn M. Hawley had for many years been on friendly terms with Sylvester and with Mr. and Mrs. Graves, spending many summers at the Tuolumne County ranch and during the later years of Sylvester's life had performed for him many friendly offices which were likewise performed for Mrs. Graves during her life. Respondent King was the surviving son of a former partner and business associate of both Sylvester and Mr. Graves and Sylvester had interested himself in the career of King. At Sylvester's death his estate consisted principally of the following: Property in Tuolumne County, known as the Sylvan Lodge property, being a tract of approximately 750 acres located easterly of Sonora; a partner's one-half interest in a tract of land in San Joaquin County; a lot in Stockton improved by a duplex building with seven rooms in each unit; and cash in bank of approximately $9,500. The following is a brief chronological statement of events as shown by the testimony. Sylvester died August 13, 1946, and on September 6th following Mrs. Graves was appointed executrix of his estate which was probated in Tuolumne County. November 29, 1946, appellant Graves presented a verified claim against the estate of Sylvester for $15,200, based upon money payments he alleged he had made for Sylvester over a period of ten years or more. February 18, 1947, Mrs. Graves was hospitalized with the first of a number of heart attacks which she suffered. Three days thereafter and while the estate of Sylvester was still in probate, she executed a deed of the Tuolumne County property to Evelyn M. Hawley. Nothing was paid by the grantee for this conveyance. She testified once that Mrs. Graves wanted her to have the property and again that Mrs. Graves had desired to will the property to her. February 24, 1947, Mrs. Hawley recorded the deed and also on that day a commercial account in the American Trust Company in the name of Ida M. Graves was converted to

a joint tenancy account between herself and Evelyn M. Hawley; there was deposited therein $3,850, representing proceeds of government bonds given Mrs. Graves by Sylvester in his lifetime. February 27th Mr. Graves' claim was approved by the probate court. On this date also Mrs. Graves and Mrs. Hawley entered into an agreement for the sale to Mrs. Hawley of furniture in the duplex, no consideration being expressed and none being paid. Also on that day a deed was executed by Mrs. Graves to Mrs. Hawley, conveying to her the duplex property. As to this transaction Mrs. Hawley testified that she had issued a personal check to pay for the duplex, also that Mrs. Graves gave the duplex to her for services rendered and, finally, that the transfer was a gift. March 25th Mrs. Graves petitioned the court for partial distribution to her from the Sylvester estate of the sum of $5,000. March 31st Mr. Graves made a bid of $11,000 for the one-half interest of the estate in the San Joaquin County property. April 1st a return of sale of that property was filed in the estate. April 2d Mrs. Graves left the hospital and returned home. April 3d Mrs. Hawley, already, as stated, the named grantee in a deed conveying to her the Stockton duplex, offered to buy the property from the estate for its appraised value of $4,042.50. On April 7th this bid was filed in court. On April 11th the court confirmed the sale of the half interest in the ranch property to Mr. Graves on his bid of $11,000 and ordered partial distribution to Mrs. Graves of $5,000 cash from the assets of the estate. This money was deposited in the joint account of Mrs. Hawley and Mrs. Graves. On April 18th the court confirmed the sale of the Stockton duplex property to Mrs. Hawley and on the same date Mrs. Graves, as executrix, pursuant to the orders of the court conveyed one-half interest in the San Joaquin County ranch to Graves and conveyed the Stockton duplex to Mrs. Hawley. The actual consideration given by Graves for the estate's half interest in the ranch was a credit of the amount of his bid upon the amount of his approved claim. No money was paid by Mrs. Hawley for the duplex property, notwithstanding her bid of over $4,000 therefor, but later when Mrs. Graves, as executrix, filed her final account she charged herself as having received that amount of money, although she had not. Up to this time, either by sales in the estate as related or her original conveyance of the estate properties, Mrs. Graves, as potential distributee and as executrix, had disposed of, or at least attempted to dispose of,

all of the property of the estate of Sylvester save a few thousand dollars of cash on bank deposit. At some time before July 7, 1947, Mrs. Hawley and Mrs. Graves were informed by counsel for the estate of Sylvester that Mrs. Graves could not give away any of the property of the estate, but that she might sell it. After receiving this advice and on July 7, 1947, Mrs. Hawley executed a quitclaim deed to Mrs. Graves, purportedly reconveying to her the Tuolumne County property. On September 15, 1947, the estate of Sylvester was the subject of a decree of distribution in the probate proceeding, the contents of which have been hereinbefore stated. On September 23, 1947, the following occurred: Mrs. Graves executed to a Mr. Ward a deed of the Tuolumne County property and Mr. Ward executed a deed of the same property to Mrs. Hawley. It was explained in the testimony that Mrs. Graves wanted to sell the property, asked Mrs. Hawley to buy it, and suggested a price of $10,000, to which Mrs. Hawley agreed. Mr. Ward's place in the picture was stated to be that he stood willing, on arrangements made with him by Mrs. Graves, to loan the necessary money to Mrs. Hawley to make the purchase since she was uncertain that she had that much money on hand. But it appears that she did have that sum in bank and that she withdrew the same by cashier's check which she then deposited in the joint account of herself and Mrs. Graves. Here the money remained until October 15, 1947, when Mrs. Graves withdrew it and deposited it in the Morris Plan Bank. There it remained until her death. It was the subject of a written declaration made by her and hereafter referred to. The two deeds were recorded and constitute the basis of the claim of appellants that the property belonged to Mrs. Hawley. On March 3, 1948, after a claimed ownership of about five months, Mrs. Hawley sold an improved acre out of the Tuolumne County property to Mr. and Mrs. Lawrence for $3,000. On March 1, 1949, Mrs. Hawley sold approximately 700 acres of the Tuolumne County property to the Odd Fellows Sierra Recreation Association for $55,000. She retained and still retains about 40 acres of the same property. In March of 1949 Mrs. Graves suffered another heart attack and was hospitalized until April 13th. During that period, Mr. Graves, acting, as he testified, at the behest of his wife, closed a personal bank account of hers by withdrawing the existing balance of $4,981.48. He said he delivered this money to her in currency and later on received a little less than $4,000 from her which he put in

his own account. On March 28th Mrs. Graves wrote: "To avoid controversy over my Brother's (E. O. Sylvester) will, I have deposited what remains of the Estate in the Morris Plan Bank in Stockton Calif—for James Woodward King. Ida M. Graves. Mr. Webster of Sonora my attorney has a copy of this." 'On May 17, 1949, Mrs. Graves suffered a third heart attack, was hospitalized, put under an oxygen tent and kept there until she died May 28th. On May 26th Mrs. Hawley withdrew all the remaining funds from the joint tenancy account which she shared with Mrs. Graves, amounting to the sum of $4,003.41. On August 3, 1949, some 60 days after the death of Mrs. Graves, her widower, Mr. Graves, married Evelyn M. Hawley and they have since been husband and wife. We have consistently referred to the present Mrs. Graves as Mrs. Hawley to avoid confusion and shall continue to do so in our further discussions. Mr. Sylvester died at the age of 86 years and Mrs. Graves was then 81; Mr. Graves was in his later seventies during the transactions above referred to, and Mrs. Hawley was 59 years of age when Sylvester died. Whether or not Mrs. Graves in her lifetime actually used or consumed any of the assets of the Sylvester estate for her comfort or support or at all was not specifically shown, but Mr. Graves testified that not only had he been willing and indeed rather insistent that he could and would support his wife wholly, but that from his assets and those of the community he did so. Mr. Graves said he had never demanded that Sylvester pay any item making up his claim against the Sylvester estate; and that he had been "burned up" when he first learned of the terms of the Sylvester will. The following occurred: "Question: [By respondent's counsel] I take it then there wasn't a very kindly feeling between you and Mr. Sylvester? Answer: Couldn't have been, could they? Would you think so? If you had any sense at all you wouldn't. I should say not. And had to give it to Mr. King when I had worked for it. . . . Nothing but a friend and I was a partner for 50 years and worked hard and made most of the money that we had." The above testimony was given when Mr. Graves' deposition was taken before trial. At the trial he testified that the will did not "burn" him up and that he then thought his deposition testimony was not true. There was much more testimony which might be referred to, including such testimony that tended to place upon the series of transactions a construction contrary to the

inference of fraudulent conspiracy drawn by the trial court. We think it, however, unnecessary to further detail the evidence. Our quest of the record is only for the purpose of determining whether there is to be found therein facts which directly or by permissible inference support the findings.

■ We may here say parenthetically that, the principle to which we have been often referred in the briefs of appellant that fraud is never to be presumed and must be proven by clear and convincing evidence finds no application here, for that principle is only for the guidance of the trier of fact.

■ We think it clear that from the foregoing portions of the record the trial court was fully supported in its findings that Mrs. Graves did not use any considerable part of the property she received in charge from the estate of her brother for her comfort or for her support and on the contrary that shortly after his death she engaged with Mrs. Hawley and Mr. Graves in a concerted and consistent plan of action by which the three intended that, so far as it could be done, and by whatever means it could be done, those properties would be so disposed of as to prevent the respondent remainderman from receiving any benefit from the bounty of Sylvester. The foregoing is particularly applicable to the proceeds of the Tuolumne County property and that was the only property affected by the judgment appealed from.

Appellants contend that the trial court erred in refusing to admit into evidence a letter written by Mrs. Graves to Mrs. Hawley under date of June 7, 1947, concerning the Tuolumne County property. It was contended that the letter was admissible as showing the state of mind of Mrs. Graves concerning the property and her desire to sell the same to rid herself of its care. The letter referred to some annoyances that had arisen in the handling of the property and contained a statement that there seemed to be no other way out than to sell the property before the expenses of attending to it should bankrupt her. ■ The point is not open to discussion on appeal since after objection made and considerable argument to the court the offer of the letter was withdrawn before the court had finally ruled upon its admissibility. Under those circumstances the claim of error is not well taken.

■ Appellants contend that the court erred in admitting into evidence ''other wholly unrelated transactions had in the estate of Ernest O. Sylvester with the defendants, Evelyn M. Hawley and George W. Graves.'' By this appellants refer to the transactions surrounding the transfer through probate

sale of the Stockton duplex and to the proceedings in probate whereby the half interest in the San Joaquin County property was sold to Mr. Graves. The contention is not sound. The court was involved in determining issues as to whether or not the Tuolumne County property had been fraudulently dis‑ posed of by Mrs. Graves with the purpose of defeating the rights of the respondent remainderman and of preferring her friend Mrs. Hawley. Anything which would tend to show that purpose and intent was admissible and the court properly took into consideration the entire series of happenings hereto‑ fore related as bearing upon the issues before it.

■ Appellants specifically urge that the evidence is insuffi‑ cient to support certain findings of the trial court. What has heretofore been said we think adequately disposes of these contentions, but we will discuss these specific objections. Appellants say that there is no support for the court's finding that the Tuolumne County property was not conveyed for the comfort and support of Mrs. Graves. In presenting their argument counsel for the appellants refer to many matters which we have not stated, but which were in evidence and from which the trial court might have inferred innocence instead of guilt, but to argue such matters is only to argue the weight of the evidence. Such arguments are only valid in the trial court. When there is considered the early attempted gift of the property to Mrs. Hawley while it was still subject to probate, the about-face and the reconveyance when counsel advised that the gift was void, the gift of the duplex at the expense of Mrs. Graves' private estate, the inadequacy of the price therefor as shown by a following sale of the same property for in excess of $15,000 which had brought the Sylvester estate but $4,000, the resentment of Mr. Graves that Sylvester should give any interest whatever to respondent King, whom he termed a stranger, the curious circumstances attending the second conveyance of the Tuolumne County property to Mrs. Hawley with the interposition of Mr. Ward, the payment of $10,000 for the property by Mrs. Hawley by depositing that amount in the joint account of herself and Mrs. Graves, when, we say, all of the foregoing is considered, the trial court was justified in placing upon the entire series of transactions the construction which it did, that is, that there existed from a time shortly after the will was disclosed, a consistent and persistent plan and intent upon the part of Mrs. Graves, Mr. Graves and Mrs. Hawley to defeat the inten‑

tions of the testator as to the remainderman King and to substitute their desires as to where the properties should end up for those of the testator. We think it is unnecessary to labor the point, although much more could be said than has been said in support of the trial court's determination.

Appellants contend against the finding of the trial court that there was no consideration paid by Mrs. Hawley for the second transfer to her of the Tuolumne County property and they point to the evidence that she paid $10,000 in the manner hereinbefore narrated. But the trial court could have inferred that the deposit of that money in the joint account of Mrs. Graves and Mrs. Hawley indicated that it was a purported consideration never intended when made to get out of Mrs. Hawley's control and ownership and this notwithstanding that a little over a month after the deposit was made Mrs. Graves withdrew that amount of money and placed it in the Morris Plan Bank, for this act may have been motivated entirely by a fear that the veneer of joint deposit would prove too thin to conceal the real purpose of the transfer. Again we think the matter so plain that the point should not be labored. Whether an innocent construction could be placed upon these matters is of no moment here if, as we hold, the trial court was warranted in the construction it did place upon them when it found there was in fact no consideration paid.

Appellants finally contend that the court was without jurisdiction to decree respondent was the owner of the $10,000 deposit in the Morris Plan Bank which, as we have seen, Mrs. Graves declared represented all that was left of the Sylvester estate. It must be borne in mind that this was an equitable action and that respondent succeeded in proving a conspiracy to defraud him of his rights. One step in the carrying out of that conspiracy was the placing by Mrs. Hawley in the joint account of herself and Mrs. Graves of a fund of $10,000 as a purported payment for the conveyance of the Tuolumne County property to her. When she sold the property she received a down payment in an equal amount. She was thereby made whole. The court, in adjusting the equities, had jurisdiction of the parties and the cause, and had the right to make a complete disposition of all relevant issues and rights between the parties before it. It was fully authorized to treat the $10,000 in the Morris Plan Bank as a fund in substitution for the $10,000 down payment on the purchase price of the property which Mrs. Hawley had received and made no

accounting for. To be sure, the decree of the court in this respect operates only between the parties. The estate of Mrs. Graves was not represented nor was her personal representative a party to the action, but it was just and equitable as far as Mrs. Hawley and Mr. Graves were concerned that the court should decree that they had no such rights in that deposit as could withstand the claim of respondent.

The judgment is affirmed.

Peek, J., and Schottky, J. pro tem., concurred.