[Civ. No. 20860. Second Dist., Div. Two. Sept. 27, 1955.]

ELIZA HILL et al., Respondents, v. WILLIAM JAMES THOMAS, Appellant.

Denio, Hart, Taubman & Simpson for Appellant.

Madden & McCarry for Respondents.

FOX, J.—On this appeal the basic question is: Under the joint will of Henry and Eliza Hill, was Eliza after Henry's demise permitted to make *inter vivos* gifts to her son (appellant) by a former marriage?

The Hills were married in Florida in 1925. Mr. Hill was retired and affluent, and approximately 65 years of age. He had lived in Florida for several years. Prior to that time he had been in business in Calumet, Michigan. He had relatives

in both Florida and Michigan. Mrs. Hill was a widow. Appellant was then in his middle thirties.

The Hills came to California in 1926. In June, 1943, Mr. and Mrs. Hill executed a joint will which was drawn by Attorney George P. Taubman, Jr. The fourth and fifth paragraphs thereof read as follows:

"FOURTH: In the event, however, that we should be killed or die at the same time, and upon the death of the survivor of us, then we direct that our joint estate shall go to the persons whose names are hereafter set forth in the proportions set opposite the name of each, as follows:

> Unto WILLIAM JAMES THOMAS an undivided one-seventh (1/7);
>
> Unto ELIZA HILL, the widow of Thomas Hill, a deceased brother of Henry Hill, the testator herein, an undivided one-seventh (1/7);
>
> Unto MARY E. DAVIS, Ft. Lauderdale, Florida, an undivided one-seventh (1/7);
>
> Unto WILLIAM G. HILL, Houghton, Michigan, an undivided one-seventh (1/7);
>
> Unto MRS. JESSIE H. WAINWRIGHT, 680 Delaware Avenue, Detroit, Michigan and MRS. LILLIAN E. GILL of 1206 West Dartmouth Street, Flint, Michigan, in equal shares, or to the survivor of them if one of them be deceased, an undivided one-seventh (1/7);
>
> Unto JAMES HILL, Ft. Lauderdale, Florida, an undivided one-seventh (1/7); and
>
> Unto MARTHA H. AIRES, Ft. Lauderdale, Florida, an undivided one-seventh (1/7).

"In the event, however, of the prior death of any of the foregoing legatees and devisees prior to the death of the survivor of us, leaving issue, then we direct that such issue take such deceased persons' share, share and share alike and by right of representation. In the event that any of said legatees and devisees, other than WILLIAM JAMES THOMAS, shall predecease the survivor of us, leaving no issue, then the share of such legatee or devisee leaving no issue shall lapse and be distributed unto the remaining legatees and devisees, other than WILLIAM JAMES THOMAS, share and share alike, or their children, by right of representation. In the event that WILLIAM JAMES THOMAS shall predecease the survivor of us, and shall leave no issue, then the share of WILLIAM JAMES THOMAS shall lapse and be distributed in equal shares to WILLIAM HENRY COOMBE, of Rochester, Michigan,

SAMUEL JOHN COOMBE, of Calumet, Michigan,
ALBERT COOMBE, of Calumet, Michigan, and
MRS. LUCY ROWE, of Long Beach, California.
the brothers and sisters of said ELIZA PASCOE HILL, or their heirs by right of representation.

"FIFTH: We declare that we have separate property as well as joint property and it is our intention and it is the purpose therefore, in making this a joint will that the survivor of us shall have the full enjoyment of all of our property, regardless of its character, provided that upon the death of the survivor of us the estate shall be distributed as aforesaid, and for this purpose we and each of us do hereby further undertake and agree with the other, in consideration of this, our joint will, that the same shall remain unrevoked save by the consent of both of us and that said estate shall be distributed as herein set forth upon the death of the survivor of us. Nothing herein contained shall be construed to be in any manner whatsover a limitation upon the full use and enjoyment by the survivor of us of the entire estate herein disposed of, but this is only intended as an agreement for the distribution of the remainder thereof upon the death of the last survivor of us."

Mr. Hill died February 3, 1947. Appellant, who resided with his mother and Mr. Hill at the time the joint will was executed and who had been maintained by Mr. Hill, was appointed executor of the Hill estate in March. The inventoried value of the estate was in excess of $113,000, and there was joint tenancy property of the approximate value of $107,000. All of this property was, or had been, Mr. Hill's separate property, and none of it was Mrs. Hill's at the time of the marriage.

On April 28, 1947, Eliza executed a new will by which she left all of her property to her son—the appellant. During 1947 Mrs. Hill transferred to appellant stocks of the value of nearly $30,000, and in 1948 she gave him stocks valued at approximately $39,000. She had received these stocks as the surviving joint tenant of Henry and herself. Also in 1947, and subsequent years, Mrs. Hill made substantial gifts in cash to her son; and he withdrew certain funds from the joint bank account he maintained with his mother. The total value of such gifts and tranfers was $101,663.47. At the time of Mrs. Hill's death she left an estate of some $50,000, all of which she bequeathed to her son.

By their first cause of action respondents sought and ob-

tained a judgment for six-sevenths of Mrs. Hill's estate. No appeal was taken from the judgment on this cause of action.

On the second cause of action, respondents were awarded a judgment for $87,140.10, which represents six-sevenths of the money and property Mrs. Hill gave her son prior to her death. It is from this portion of the judgment that the appeal is taken.

In seeking a reversal, appellant takes the initial position that paragraph Fifth of the joint will of Henry and Eliza Hill constituted a contract between them relative to the disposition of their property by the survivor; that respondents' rights are measured by the terms of such contract; that this contract is "perfectly clear" and "without equivocation"; that it "applied only to testamentary disposition and did not prohibit the inter vivos transfers made by Eliza to appellant." His ultimate conclusion, however, is not sound.

█ The problem here is to ascertain the intention of Mr. and Mrs. Hill as revealed by the language they used in the document they executed. In such a search, all parts of the document dealing with the subject must be considered together. If uncertainty results parol evidence may then be resorted to.

█ We begin our analysis of the Hill joint will and contract with paragraph Fourth, quoted *supra*. It reveals the agreed pattern for the distribution of their property upon their death, viz., into seven equal shares to named beneficiaries. Six of these beneficiaries were relatives of Mr. Hill; the seventh was Mrs. Hill's son, the appellant. It is significantly provided that if any of the six beneficiaries on Mr. Hill's side of the house shall predecease the survivor of him or Mrs. Hill, leaving no issue, then such share shall lapse and be distributed among the other relative-beneficiaries of Mr. Hill. Appellant is *expressly* excluded from participating in any such lapsed share. It is thus clear that in any event six-sevenths of their ultimate estate was to go to Mr. Hill's relatives and that no more than one-seventh was to go to appellant.

We come now to paragraph Fifth, whereby the parties agreed that their joint will should remain unrevoked save by the consent of both parties and that the estate should be distributed as therein set forth upon the death of the survivor.*

---

*However, in less than 90 days after Mr. Hill's death, Mrs. Hill violated her agreement, revoked the will and executed a new will leaving everything to appellant.

In the first sentence of this paragraph the parties declared that they had separate as well as joint property and that it was their purpose, regardless of the character of the property, that the survivor should have the full enjoyment of all of their property, and they agreed that upon the death of the survivor it should be distributed as set forth in paragraph Fourth. The last sentence of paragraph Fifth, upon which appellant bases his case, reads: ''Nothing herein contained shall be construed to be in any manner whatsoever a limitation upon the full use and enjoyment by the survivor of us of the entire estate herein disposed of, but this is only intended as an agreement for the distribution of the remainder thereof upon the death of the last survivor of us.'' It is therefore clear that the Hills agreed that the survivor should have a life estate in all of their property for his or her ''full use and enjoyment'' (*Estate of Tooley*, 170 Cal. 164 [149 P. 574, Ann. Cas. 1917B 516] ; *Adams* v. *Prather*, 176 Cal. 33 [167 P. 534] ; *King* v. *Hawley*, 113 Cal.App.2d 534 [248 P.2d 491] ; *Ewbank* v. *Smiley*, 130 Ind. 393 [29 N.E. 919] ; *Johnson* v. *Johnson*, 51 Ohio St. 446 [38 N.E. 61]), and that whatever remained upon the death of the survivor should be distributed as provided in their joint will.

The question then is: Was Mrs. Hill, as a life tenant with the right to the ''full use and enjoyment'' of the life estate, entitled to make gifts *inter vivos* therefrom to her son? The answer is clearly in the negative because otherwise the testamentary pattern that the Hills had agreed upon could have been completely or, as was here in fact attempted, substantially frustrated, for under appellant's theory Mrs. Hill could have absolutely defeated the terms of the joint will by giving to her son all the property, so that the members of Mr. Hill's family whom he wished to have six-sevenths of his property after Mrs. Hill's lifetime needs were taken care of, would have received nothing. Actually such interpretation led to the depletion of two-thirds of the estate which was intended for her ''use and enjoyment,'' and could have resulted in its complete depletion, thus leaving her without any financial protection. Such, obviously, was not the intention of the parties when they executed their joint will and agreement of June 7, 1943. ■ Finally, the right to the ''full use and enjoyment'' of a life estate in property with remainder over, as here, contemplates expenditures for the benefit of the life tenant. Just what that might have encompassed we are not called upon to decide. ■ But we do hold that giving the

estate away was not for her benefit and was not permissible under the right to use and enjoy the estate. (*Hardy* v. *Mayhew*, 158 Cal. 95 [110 P. 113, 139 Am.St.Rep. 73] ; *King* v. *Hawley, supra*; *Gadd* v. *Stoner*, 113 Mich. 689 [71 N.W. 1111] ; *Baldwin* v. *Morford*, 117 Iowa 72 [90 N.W. 487] ; *Griffin* v. *Kitchen*, 225 Mass. 331 [114 N.E. 431] ; 69 Corpus Juris, Wills, § 1943(b) ; 33 Am.Jur. p. 739, § 259.)

In *Hardy* v. *Mayhew, supra,* by the decree of distribution in the estate of Mrs. Mayhew the sum of $40,000 was distributed to her husband ''for his use during his natural life and on his death the unused portions of said sum to Charles P. Mayhew and Frank J. Mayhew, the sons, to Mary E. Phipps, the daughter, and to Florence A. Hardy, the granddaughter, of said deceased in equal shares each one-fourth thereof.'' During his lifetime, Judge Mayhew attempted to make gifts as follows : $17,500 to Mary E. Phipps; $11,000 to Frank J. Mayhew, and $10,700 to Charles P. Mayhew. If these gifts were sustained, the granddaughter would receive practically nothing. The court pointed out (p. 100) that the ''use'' authorized by Judge Mayhew ''did not include a disposition of practically the whole thereof (i. e., the $40,000.00) *either by will or by gift during his life, especially a gift made for the very purpose of excluding one of the remaindermen from participating in what otherwise would have been 'unused' by him at the time of his death.''* (Emphasis added.)

In *King* v. *Hawley,* 113 Cal.App.2d 534 [248 P.2d 491], the will before the court read : ''I devise and bequeath all my property to my sister, Mrs. Ida M. Graves . . . and . . . she may use all the proceeds of my estate for her comfort and support; but whatever may be left of my estate at her death shall go to James Woodward King of Sacramento, California, and to his heirs.'' The court held (p. 537) that ''there was vested in Ida M. Graves an estate for life with remainder over to respondent; that she was given a full right to use the property for her comfort and support and to that end could fully consume it and for that purpose could sell it and use the proceeds of such disposition, but, again, for her comfort and support. We hold further that in the exercise of the power of consumption, use and disposition, she was limited to the purpose for which the property was given to her, that is, her use and consumption for her comfort and support, and that *she could not give the property away during her lifetime nor will it away at her death.''* (Emphasis added.)

In *Baldwin* v. *Morford, supra,* by the language of the will under consideration, the testator's widow was authorized ''to

have and to hold, *enjoy and use* during her natural life, with full power to sell and convey for the purpose of paying debts, and for her own support, comfort and maintenance, without let or hindrance from anyone whatever, and in her own discretion,'' the testator's property. (Emphasis added.) It was held that this power to dispose of the property did not include authority to the widow to dispose of the estate in whole or in part by gift, and that the purchase by her of a certain lot in the name of another was, in effect, a gift to him of the purchase price and void.

In *Griffin* v. *Kitchen, supra,* the husband's will gave his wife a life estate for her *support, comfort and enjoyment,* or for any other purpose for which she might deem it necessary to use it, with ''full power during her lifetime to sell in her sole and individual name, or dispose of in any way she may deem necessary . . . any or all of my said personal or real estate.'' It was held that while the will gave an absolute and unlimited power to use the principal for any purpose which the wife in good faith thought reasonable and proper to provide in a broad way for her support, comfort and enjoyment, a gift of money to other persons was not a use of the estate for the support, comfort and enjoyment of the widow in the sense and meaning of the will.

 In view of appellant's suggestion, that the gifts by his mother from the estate to him would be an enjoyment of the estate by her, the following statement from 69 Corpus Juris, Wills, section 1943(b), quoted with emphasis in *King* v. *Hawley, supra,* is particularly apposite: ''. . . *a power of disposal for the donee's benefit, or comfort, is exercisable only for his personal benefit, or personal comfort, by the application of the property or its proceeds to, primarily, his physical comfort and ease, and not for the benefit or comfort of another; and while it includes, to a limited extent, his mental comfort, such power does not authorize a transfer or disposition for the donee's mere mental satisfaction, or peace of mind, such as a gift to his children, so that they may have the property after him, instead of the remaindermen designated by the testator, or a gift to a church, charity, or public institution.''

By reading the last sentence of paragraph Fifth* out of

---

*''Nothing herein contained shall be construed to be in any manner whatsoever a limitation upon the full use and enjoyment by the survivor of us of the entire estate herein disposed of, but this is only intended as an agreement for the distribution of the remainder thereof upon the death of the last survivor of us.''

context, appellant gives it a significance entirely out of harmony with the testamentary pattern and agreement of the parties. That sentence does not enlarge the rights of the survivor in the full use and enjoyment of the estate. The estate must still be for the "use and enjoyment" of the life tenant—not for the use and enjoyment of anyone else. And giving away the property is not a "use and enjoyment" of the estate by the life tenant. The first part of the sentence merely serves to make clear the idea that the survivor is not to be hampered in his or her personal use and enjoyment of the estate, i. e., in making expenditures therefrom for the benefit of such survivor. The last portion of the sentence is to definitely fix the time when and the estate to which the remaindermen's interest attaches, viz., the amount of the estate that remains upon the death of the survivor.

Taking into view the family background and the circumstances of the parties at the time they made the joint will and contract in June, 1943, fortifies the trial court's conclusion that Mrs. Hill did not have the right to make the questioned gifts to her son. When the Hills were married, Mr. Hill was well to do and retired. Mrs. Hill had had no part in the accumulation of his wealth. They had no children. She did not have any substantial property but she did have a son by a former marriage. Under these circumstances it was natural that Mr. Hill should make provision for his widow's welfare in the event she survived him. But since she did not help him accumulate his property, and since they had no children of their own, it was reasonable, after her welfare was provided for, that he should desire that a substantial portion of whatever was left should go to his family. The document they signed embodied this very natural and reasonable pattern for the protection of the survivor and the distribution of the property that remained. To permit the gifts Mrs. Hill made to her son tended to undermine her own protection and welfare and deprived the respondents of property which was unmistakably intended for them.

As an alternative ground for reversal, appellant argues that the uncontradicted oral testimony of his attorney, Mr. Taubman, established that it was the intention of the Hills that the survivor should have the right to make *inter vivos* gifts, and that the trial court arbitrarily disregarded that evidence. Appellant's position is not sound.

Mr. Taubman, who drew the Hill joint will and agreement, testified that in his conferences with them incident to the

preparation of the document, Mr. Hill stated he did not want to handicap Mrs. Hill at all; that ''whatever she wants to do in the event she survives me, including giving it [the property] away, she can do.'' In this connection it should be noted that appellant was executor of Mr. Hill's estate and that Mr. Taubman was his attorney; also that appellant is executor of his mother's estate and Mr. Taubman is his attorney in that matter, too. Mrs. Hill's will revoking her joint will with Mr. Hill and leaving the entire estate to appellant was executed on April 28, 1947—less than two months after appellant had qualified as executor of the Hill estate, in which Mr. Taubman represented him. It does not directly appear that Mr. Taubman prepared Mrs. Hill's new will, but a member of his firm was a witness thereto. An examination of Exhibit 6 indicates that no notice was given to any of the respondents herein of the death of Mrs. Hill. The judgment in this case on the first cause of action gave to respondents six-sevenths of the estate of Mrs. Hill and no appeal has been taken from that portion of the judgment. Hence appellant and his counsel do not now question the right of respondents to six-sevenths of Mrs. Hill's estate. However, it was necessary for respondents to prosecute this action, otherwise they would have received nothing from the estate.

This testimony did not, as a matter of law, require a finding in accordance therewith for two reasons. ■ The first is that uncorroborated testimony as to an oral declaration of a deceased person is the weakest form of evidence and is open to suspicion; but where admissible, it may be weighed by the trier of facts the same as other evidence and may be disregarded where shown to be unconvincing or insubstantial. (*Duff* v. *Schaefer Ambulance Service, Inc.*, 132 Cal.App.2d 655, 669 [283 P.2d 91]; *Estate of Emerson*, 175 Cal. 724, 727 [167 P. 149].) ■ The second is that the trier of fact may reject the uncontradicted testimony of a witness provided he does not act arbitrarily. (*Hicks* v. *Reis*, 21 Cal.2d 654, 659-660 [134 P.2d 788].) ■ Among the relevant considerations in this respect are the character of the evidence, the motives of the witness, his interest in the result of the case, the manner in which he testifies, and the contradictions appearing in the evidence. (*Huth* v. *Katz*, 30 Cal.2d 605, 609 [184 P.2d 521]; *American Trust Co.* v. *Fitzmaurice*, 131 Cal. App.2d 382, 388 [280 P.2d 545].) The trial judge was not compelled to give full credence to the testimony of this witness because of the weakness of this type of evidence and

because of his interest in the outcome of the case and close relationship with appellant.

It is not without significance that the document the Hills executed did not contain any express or specific language indicating that the survivor should have the privilege of making gifts *inter vivos* if such was in fact intended. This omission takes on added significance from Mr. Taubman's testimony that Mr. Hill said to him *"don't put anything there about her having the right to give it away*. I mean it that way but don't encourage her."* (Emphasis added.) The court may well have drawn the inference that Mr. Hill did not in fact desire or intend that Mrs. Hill should have any right to make such gifts as are here in controversy. This is particularly true in light of the well designed plan for her future protection and security and the ultimate disposition of whatever property remained, both of which would be nullified by an unrestrained exercise of the right to make *inter vivos* gifts. Such an inference would lend additional support to the trial court's decision.

In his reply brief appellant takes the position that the gifts to him from his mother were from stocks held in joint tenancy by Mr. and Mrs. Hill and cash withdrawn from joint bank accounts between him and his mother and that joint tenancy property was not comprehended by the agreement in paragraph Fifth. In making this argument appellant overlooks the declaration of the parties at the outset of the paragraph that they have separate as well as joint property and that it is their intention and purpose in making a joint will that the survivor shall have the full enjoyment "of *all* of our property, *regardless of its character."* (Emphasis added.) It is thus clear from the language the parties used that joint tenancy property and all other property the parties owned was included in their agreement in paragraph Fifth.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.