[Crim. No. 1159.    Fourth Dist.    July 18, 1957.]

THE PEOPLE, Respondent, v. IRENE WILLIAMS, Appellant.

Watson P. Osenbaugh for Appellant.

Edmund G. Brown, Attorney General, and Herschel T. Elkins, Deputy Attorney General, for Respondent.

MUSSELL, J.—Defendant was charged in an information with the commission of a misdemeanor, to wit, violation of section 702 of the Welfare and Institutions Code, in that on or about the 15th day of October, 1956, she did wilfully and unlawfully engage in immoral conduct in the presence of her daughter, then 9 years of age, which acts caused and tended to cause and encourage the child to become and remain a minor child who is leading and in danger of leading an idle, dissolute, lewd and immoral life. Defendant waived trial by jury and the court found her guilty as charged in the information. She was granted probation for a period of two years, the only condition thereof being that she remain out of trouble during that time. She appeals from the judgment and the order granting probation.

Appellant was at the time involved living in Buena Park in Orange County with her two daughters, Barbara, aged 14 and Gracie, aged 9. Corporal Insley, a United States Marine, first met appellant in August, 1956. They went to a drive-in theatre with Corporal James Park and appellant's daughter, Barbara. They all went to another movie the following night. On several occasions thereafter Corporal Insley and appellant had sexual intercourse and these acts usually occurred in an orange grove while Barbara and Corporal Park remained in the automobile.

On October 15, 1956, Corporal Insley, with Sergeant Ouert, went to appellant's home in the evening. Appellant said that

her husband was in the area so they went to her girl friend's home and later that night they returned to the home of appellant. Her daughter, Barbara, Patricia Flint, a 13-year-old girl, and appellant's 9-year-old daughter, Gracie, were in the house. Appellant put Gracie to bed but she would not go to sleep and appellant then lay on the bed beside her. About five minutes later Corporal Insley followed appellant into the bedroom and lay on the bed with appellant and the child. Gracie fell asleep and appellant and the corporal undressed and had sexual intercourse, while the child was in the bed with them. While this act was taking place, Corporal Park and Patricia were having sexual intercourse on the couch in the living room. On at least one other previous occasion appellant had put Gracie to sleep and, in the same bed, Corporal Insley and appellant had sexual intercourse.

On the night of October 15, 1956, after the act of sexual intercourse took place, appellant's husband came home and found appellant and Insley in bed with Gracie. Insley testified that "there was a big commotion. The front door was being knocked down. She jumped out of the bed and said 'There is my husband . . . he will kill you'; that appellant then ran out of doors dressed in a half slip; that he "headed for the clothes closet to put my clothes on and her husband came in and looked in the clothes closet and got hold of me and we wrestled in the hallway and he hit me on the head with the telephone, which I later found out what it was when he hit me, and I got away from him and went back to the base."

■ Appellant contends that the evidence does not show that the act of sexual intercourse between appellant and Insley on the night of October 15, 1956, took place in the presence of the minor child. This argument is entirely without merit. The evidence shows beyond question that the act of sexual intercourse took place in the bed in which the child was lying. Obviously, it occurred in her presence.

■ Appellant's next argument is that the evidence is "insufficient to sustain the verdict" as the testimony of Insley and appellant was to the effect that the child was asleep during and subsequent to the acts complained of. This argument is likewise without merit. The trial court was not required to accept this testimony as true even if it was uncontradicted since the court could reasonably infer from other facts and circumstances that the child was not in fact asleep during and after the act took place. (*People* v. *Woods*, 75 Cal.App.2d 246,

248 [170 P.2d 477].) ■ As is said in *People* v. *Bobeda,* 143 Cal.App.2d 496, 500 [300 P.2d 97], "The trial court's determination of the truth or the veracity of a witness is final and it is not required to accept as true the testimony of a witness, even though not contradicted." (See also *Hicks* v. *Reis,* 21 Cal.2d 654, 660 [134 P.2d 788], to the same effect, and *Hill* v. *Thomas,* 135 Cal.App.2d 672, 681 [288 P.2d 157], where the court said that the trier of fact may reject the uncontradicted testimony of a witness provided he does not act arbitrarily, and that among the relevant considerations in this respect are the character of the evidence, motives of the witness, his interest in the result of the case, the manner in which he testifies, and the contradictions appearing in the evidence. ■ Furthermore, the trial court herein could reasonably have found the appellant guilty of the offense charged even though the child were asleep during the sexual act and the disturbance and noise which occurred thereafter.

■ The purpose of the statute involved is to make criminal the commission of any act tending to cause minors to become dependent or delinquent. (*People* v. *Lowell,* 77 Cal.App.2d 341, 347 [175 P.2d 846].) In *People* v. *Deibert,* 117 Cal.App. 2d 410, 415-416 [256 P.2d 355], it is held that a case is established when the evidence proves acts or omissions on the part of the defendants which tend to cause or encourage minors to lead an idle, dissolute, lewd or immoral life and that whether the serving of alcoholic beverages to a minor tends to cause him to become an idle, lewd or dissolute or immoral person is essentially a question for the jury.

■ In the instant case, Corporal Insley testified that "she, the baby Gracie, would never go to sleep unless Mrs. Williams went in and laid down with her and Gracie also made a fuss. She said she would tell her daddy, Mr. Williams, that she was going out if she wouldn't let me come in and sit down beside her. . . ." This testimony indicates that the child knew that her mother was wrongfully "going out" with men other than her husband and it is not unreasonable to infer that the act of appellant in permitting Insley to get into the same bed with her and the child, under the circumstances, constituted a violation of the statute involved.

Judgment and order affirmed.

Barnard, P. J., and Griffin, J., concurred.