[Civ. No. 6249.   Fourth Dist.   Oct. 26, 1960.]

GEORGE MARDIKIAN, Respondent, v. A. S. MENICK,* as Trustee in Bankruptcy, etc., Appellant.

Jerome Lyman Richardson, Benjamin W. Henderson, Hanna & Morton, Harold C. Morton, Max K. Jamison and Edward S. Renwick for Appellant.

Shirley, Saroyan, Calvert & Peterson, Shirley, Saroyan, Cartwright & Peterson, Harry P. Calvert, S. M. Saroyan and Robert E. Cartwright for Respondent.

GRIFFIN, P. J.—Plaintiff-respondent George Mardikian brought this action for dissolution and accounting of a partnership alleged to have been orally entered into on November 15, 1943, between him and defendant-appellant Haig Tatosian (hereinafter referred to as defendant). (H. S. Menick, trustee in bankruptcy, has been substituted as defendant and appellant.) The partnership was formed for the purpose of growing, selling and producing vegetables and other produce on

*Reporter's Note: This case was previously entitled George Mardikian v. Haig Tatosian.

a 320-acre piece of property in Imperial Valley owned equally by the parties. It is alleged that defendant operated the farm, earned large profits and accumulated certain assets, and defendant has appropriated them without accounting and that the amount of profits and assets was unknown to plaintiff. Defendant denied the allegations and claimed no partnership ever existed.

The court found generally in accord with the allegations of the complaint and specifically found that on November 15, 1943, they entered into the partnership agreement and they transacted business according to the agreement until August 24, 1955, when it was dissolved by mutual consent, subject to an accounting; that by the agreement the parties agreed to equally share the profits and/or losses; that from the date of the agreement the partnership transacted a large business and earned large profits and defendant has never accounted to plaintiff for the full earnings and profits and has failed to pay plaintiff his share thereof; and that defendant collected $36,503.94 as plaintiff's share which he refused to turn over to plaintiff. Judgment was entered accordingly.

Plaintiff lived in San Francisco. His wife and defendant's wife were sisters. Defendant was a produce man engaged in operations in the El Centro area. The crop year usually begins as of June 1 and ends at the same time the following year. From 1943 to 1954 defendant made certain remittances to plaintiff pertaining to the claimed income of the property. The principal argument is that the court, in its accounting action, failed to take into consideration uncontradicted evidence of losses to the partnership, aggregating $36,046.90, i.e., losses totaling $11,462.64 in the crop years 1948-49 and 1949-50, and losses totaling $24,584.26 in the crop year 1954-55.

In his reply brief, defendant claims he overlooked an accounting error as to crop years 1948-49, 1949-50 and says that there was an additional sum of $5,889.06 due as credit on the judgment because this payment was made to plaintiff as rental for defendant's use of the land during the two crop years and that this sum represents one-half of that item. Defendant seeks to have the judgment reduced accordingly.

Plaintiff's certified public accountant testified that he examined the records pertaining to the farming operations of that tract commencing January 1, 1944, through crop year ending June 30, 1954, and these records show a net profit of $36,503.94

due plaintiff. He indicated a balance of $8,930.30 was shown on the books as an accounting from the date of inception of the partnership to June 30, 1954.

According to the evidence, in 1943 Martin D. Wahl, Inc., negotiated for the purchase of the 1600-acre Cudahy Ranch, but, according to defendant's story, could not finance all of the amount required, i.e., $275,000, and Wahl asked defendant to purchase 320 acres of that land for $55,000. Defendant requested plaintiff to advance one-half of that amount to make the purchase, which was done, under the oral agreement that defendant would operate that acreage and account for and pay to plaintiff one-half its profits or returns. The acreage was purchased and defendant leased the 320 acres to Wahl and Wahl and defendant entered into some form of joint venture or partnership to operate the entire 1600-acre farm as a single unit and it was so operated for a few years. Eventually that relationship terminated and defendant later operated the 320 acres by farming or leasing it out to others, either for pasturage or growing crops. Defendant's claim is that plaintiff was entitled to only one-half of the rental return and he, defendant, was entitled to retain all the money earned by the Tatosian-Wahl joint venture or partnership from the 320 acres, without accounting to plaintiff for one-half of it. He further claims that he did not believe he was in partnership with plaintiff all these years and actually did not have to account to plaintiff for these profits and did not inform him of his losses during the years 1948-49 and 1949-50. His contention is that since the court has awarded to plaintiff one-half of the profits over these years, defendant should now be credited with one-half of the claimed losses for the years 1948-49, 1949-50 and 1954-55.

Plaintiff's story is that defendant telephoned him about a wonderful opportunity to buy land in Imperial Valley and defendant needed $55,000 to put the deal through and purchase 320 acres of it; that defendant had an agreement with Wahl to farm the entire 1600 acres as one unit and all of them would be one-fifth partners and all would be rich, and plaintiff would share in the profits. After further assurance, plaintiff gave $50,000 to defendant and borrowed an additional $5,000 which was also paid to defendant to be used to buy the 320-acre parcel. Defendant gave a promissory note to plaintiff's wife as security for the loan of one-half of the amount advanced by plaintiff and a promissory note to his brother to secure the $5,000 loan. After some years of opera-

tion of the acreage, defendant paid these notes. It was fully agreed that defendant was to have full control over the operation of the 320 acres for such production as in his judgment was best. He told plaintiff he knew how to carry on a produce business operation and they would make so much money "your head will swim" and "we will make plenty of money in our own partnership." Defendant took plaintiff to see the 1600-acre property and pointed out homes, buildings, feed bins, alfalfa and other improvements on the property, and said that each of them now had a one-fifth interest in them. It developed that the 320 acres purchased by them had no buildings on them and were level land planted to alfalfa and had been operated in connection with the entire farm.

Some remittance, as herein indicated, was returned to plaintiff but in much smaller amounts than represented. For a few years plaintiff kept inquiring of defendant about his small returns and defendant kept saying he should wait because he (defendant) expected greater returns in the near future. It does appear from certain audits that defendant did make considerable profits from his venture over a period of years and that he failed to divide the profits made from his returns from the so-called partnership venture, which included the 320 acres, and it was not until this action was filed that plaintiff was informed of these profits which defendant retained. About June 1, 1954, when plaintiff discovered that defendant failed to fully account for these profits, there was some conversation about dividing the 320-acre parcel between them. It appears that during the 1954-55 crop year, defendant personally selected 160 acres and, through one Maljan, planted and produced a crop of sugar beets and carrots and allowed the remaining 160 acres, which he contended belonged to plaintiff, to remain idle. He failed to account to plaintiff for the one-half harvested by him on the theory there had been an oral modification of their partnership agreement. (A subsequent partition suit was filed.) The court found that the original partnership agreement existed until August 24, 1955. However, it does appear from a letter dated January 20, 1954, from Tatosian's attorney directed to plaintiff's attorney in reference to the $8,930.30 settlement of accounts to June 30, 1954, saying, "I am advised that after June 30, 1954, it may be necessary for Mr. Mardikian to himself look after his interests in the property" indicating that any crop losses suffered after June 30, 1954, would be borne by defendant.

In regard to crop years 1948-49 and 1949-50, defendant claims a crop loss of $3,734.80 for 1948-49 and $7,727.84 for 1949-50, and argues that the court did not take into consideration these crop losses in determining the net profits and losses for these years. From 1943 to June 30, 1954, defendant regularly remitted statements to plaintiff about the income from the property and as to the crop year 1948-49 there was an itemized statement regarding the income. There was no mention of any crop losses. The record indicates a remittance on November 1, 1948, of two items, $4,792.22 and $2,663.73, as "ranch income." On December 29, 1949, defendant wrote plaintiff as follows:

"We are submitting an accounting for 1949 Cudahy Ranch deal.

Tatosian-Mardikian Ranch Account

| | | |
|---|---|---|
| 1949 Ranch Income ................... | | $8,000.00 |
| . . . Taxes ...................$1,124.90 | | |
| . . . Taxes ................... 901.18 | | |
| . . . . . . . . . . . . . . . . . | | . . . |
| (Balance) ........................... | | 5,969.92 |
| George Mardikian, Share ½ ........... | | 2,984.96 |

Please find our check enclosed for the above amount.

Yours very truly,
H. Tatosian Company
By Leo H. Brett"

A similar statement and check for $3,001.44 was sent for the crop year 1949-50. There was substantial evidence that the court did consider the net income and losses, if any, for the two years mentioned. The testimony as to any crop losses was not too substantial and the court was authorized in disregarding this portion of the evidence.' In addition, on January 20, 1954, defendant sent plaintiff a letter enclosing a check for $8,930.30 in full settlement of Mr. Tatosian's obligations to Mr. Mardikian to June 30, 1954. (It contained the notation "The date is given me by Mr. Tatosian's auditors and may be in error.)

In reference to the crop year 1954-55, defendant claims he suffered a loss of $24,584.26. He relies upon reports of his auditor, one made many years after the transactions actually took place and after the court found that a partnership existed over the years indicated. Tatosian testified that he kept no accurate and complete records as to the Tatosian-Mardikian partnership accounts; neither did plaintiff keep any records

of those accounts other than reports made to him by defendant. The main source of information was obtained from the books of Martin D. Wahl, Inc. The 1954-55 claimed loss was based upon a record indicating that Maljan owed defendant $22,640.30. When Maljan was interviewed by plaintiff's accountant on December 3, 1955, Maljan stated that he owed defendant approximately $20,000 on a watermelon deal but that subsequently he had planted a carrot crop and did not know its return and that defendant had harvested sugar beets and had made no report to him as to the amount of sales. Defendant's auditor said he examined defendant's records and made "adjusting entries" therein because matters such as rent did not appear in them. In the last accounting he came up with a finding that plaintiff owed defendant $30,092.66. Plaintiff's auditor claimed defendant owed him $36,503.94, the amount of the judgment rendered herein. At the conclusion of the trial the judge quite appropriately remarked:

"One of the things that appears to me as being rather peculiar about this case, as I listened to Mr. Hyde and Mr. Poindexter [auditors]. I couldn't help but be impressed that one of three things must be true; either they examined different sets of books, or, 2, they took different figures into account, or, 3, accounting is not an exact science. I don't know which of those is correct or whether all three of them are correct. Another feature . . . is the surprising, if not suspicious, circumstance that the Defendant contends most vigorously that he is not a partner of the Plaintiff and that there should be no accounting, and 4 months later his accountants do prepare an accounting, because the Court ordered it, and found that the Plaintiff is indebted to the Defendant in the sum of $30,000, which is all most amazing."

Although plaintiff produced no direct evidence as to profits made or the loss of any profits in reference to the crop year 1954-55, it is quite apparent that the trial judge did not believe defendant's auditor's figures which were obtained in a manner not too convincing of their trustworthiness. The trial court had the right to consider both rental and production returns from the 320 acres over the period in question and to disregard defendant's claim of losses for the crop years 1948-49, 1949-50 and the year 1954-55.

We conclude that the ultimate judgment rendered by the trial court was sufficiently supported by the evidence and the findings and that defendant failed to adequately convince the

court that there were additional losses which had not been accounted for by defendant. (*Hicks* v. *Reis,* 21 Cal.2d 654 [134 P.2d 788] ; *Hill* v. *Thomas,* 135 Cal.App.2d 672, 681 [288 P.2d 157] ; *Overton* v. *Vita Food Corp.,* 94 Cal.App.2d 367 [210 P.2d 757] ; *Gray* v. *Brinkerhoff,* 41 Cal.2d 180 [258 P.2d 834].)

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 21, 1960.