[Civ. No. 37996. First Dist., Div. One. Mar. 3, 1977.]

Estate of MARY ANDERSON CONROY, Deceased.
KENNETH CORY, as State Controller,
Petitioner and Appellant, v.
THOMAS FRANCIS CONROY, as Executor, etc.,
Objector and Respondent.

## COUNSEL

Myron Siedorf, Edwin Rosenthal and Dennis B. Anderson for Petitioner and Appellant.

Orrick, Herrington, Rowley & Sutcliffe, Paul J. Sax and Roger L. Davis for Objector and Respondent.

## OPINION

**MOLINARI, P. J.—** ▉ ▉ The Controller of the State of California (hereinafter Controller) appeals from an order approving the amended report of the inheritance tax appraiser which did not include the assets of a trust created by Julia Quinn Anderson (hereinafter Anderson) in the estate of Mary Anderson Conroy (hereinafter Conroy).[1]

▉ The question presented is whether Conroy's testamentary exercise of the limited power of appointment held over the assets of the Anderson trust is subject to California inheritance tax under section 13695 of the Revenue and Taxation Code.[2] Section 13695 provides as follows: "Where a limited power of appointment given in conjunction with a disposition of property effected before 5 p.m. of June 25, 1935, by a donor who died prior to that date, is exercised after that date by the donee, the exercise of the power is a transfer subject to this part from the donee to the person appointed at the time of the exercise, as though the property to which the power relates belonged absolutely to the donee and is transferred by him by will."

---

[1]Probate Code section 1240 provides that an appeal may be taken from an order "fixing an inheritance tax or determining that none is due." In a document entitled "Decision," which is signed and filed, the Honorable G. Brooks Ice of the Superior Court of San Mateo County, after specifying his reasons therefor, stated "The amended Report of the Inheritance Tax Referee is hereby approved." "However, since no particular language is requisite for an order, a trial judge's written statement of his views on the law and the proper decision may be treated as an order when signed and filed and when it constitutes his final judicial determination on the merits." (*Martino v. Concord Community Hosp. Dist.*, 233 Cal.App.2d 51,·56 [43 Cal.Rptr. 255].) The use of the phrase "is hereby approved" would clearly indicate that the document entitled "Decision" was intended to be a final determination of the matter on the merits and therefore an order and should be treated as such although not properly labeled.

[2]Unless otherwise indicated all statutory references are to the Revenue and Taxation Code.

The parties have stipulated to the following facts: Anderson died prior to 5 p.m. on June 25, 1935. Under her will Anderson created a trust pursuant to the terms of which Conroy received a testamentary general power of appointment over the principal of said trust. By a document dated February 17, 1947, Conroy released the previously existing general power of appointment over the assets of the Anderson trust. On and after February 17, 1947, such power was exercisable only in favor of a class of persons, which class did not include any persons other than her spouse, her father, her descendants or the descendants of her spouse, descendants (other than herself) of her mother or father, spouses of such descendants, and donees described in sections 812, subdivision (d), and 861, subdivision (a)(3) of the Internal Revenue Code in effect on that date. At the time of her death Conroy possessed only a limited power of appointment with respect to the assets of said trust, which power could not be exercised for the benefit of herself, her estate, her creditors, or the creditors of her estate. The limited power of appointment remaining after the 1947 release of the general power of appointment was exercised by Conroy in her last will and testament.

In addition to the stipulated facts the record discloses that Conroy's last will and testament was executed on August 21, 1968, that a codicil thereto was executed on March 11, 1970, and that Conroy died on December 31, 1970.

A "power of appointment" may be created by deed or will and is defined, generally, as a power or authority given to a person to dispose of property, or an interest therein, which is vested in a person other than the donee of the power. (*Estate of Kuttler,* 160 Cal.App.2d 332, 337 [325 P.2d 624]; see Civ. Code, § 1382.1.) A more comprehensive definition is to be found in Black's Law Dictionary (4th ed.) wherein it is defined as "A power or authority conferred by one person by deed or will upon another (called 'the donee') to appoint, that is, to select and nominate, the person or persons who are to receive and enjoy an estate or an income therefrom or from a fund, after the testator's death or the donee's death, or after the termination of an existing right or interest."

A power of appointment is "general" or "special" (see Civ. Code, § 1381.2). In the Revenue and Taxation Code a "special" power of appointment is designated and referred to as a "limited" power of appointment (see §§ 13692 and 13693). Civil Code section 1381.2, subdivision (a), defines a "general" power of appointment as follows: "A power of appointment is 'general' only to the extent that it is exercisable

in favor of the donee, his estate, his creditors, or creditors of his estate, whether or not it is exercisable in favor of others." Section 13692 defines a "general" power of appointment as "power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate. . . ."

A "special" power of appointment is defined in subdivision (d) of Civil Code section 1381.2, as follows: "All powers of appointment which are not 'general' are 'special.' " In the Revenue and Taxation Code such a power is defined as follows: " 'Limited power of appointment' means a power which does not qualify under the preceding section [13692] as a general power of appointment." (§ 13693.)

We observe that these statutory definitions are of recent enactment. Sections 13692 and 13693 were added by the Statutes of 1965 (ch. 1070, § 6, p. 2716). Civil Code section 1381.2 was added by the Statutes of 1969, effective July 1, 1970. (Stats. 1969, ch. 155, § 1, p. 403.) However, these definitions comport with existing definitions to be found in court decisions under the common law which remains in effect.[3]

■ Under the decisions a "general power of appointment" is generally defined as one which may be exercised in favor of anyone, including the donee, and is, therefore, equivalent to a grant of absolute ownership. (*Estate of Carter*, 47 Cal.2d 200, 207 [302 P.2d 301]; *Estate of Kalt*, 16 Cal.2d 807, 812 [108 P.2d 401, 133 A.L.R. 1424]; *Estate of Kuttler, supra*, 160 Cal.App.2d 332, 338; *Dallapi* v. *Campbell*, 45 Cal.App.2d 541, 547 [114 P.2d 646]; *Pennsylvania Co. for Insurance on Lives etc.* v. *Kelly*, 134 N.J. Eq. 120 [34 A.2d 538, 545].) ■ A "special power of appointment," on the other hand, is usually defined as one which may be exercised in favor of certain specified individuals or to a class of designated persons, not including the donee or his estate. (*Pennsylvania Co. for Insurance on Lives etc.* v. *Kelly, supra; Brown* v. *Fidelity Union Trust Co.*, 126 N.J. Eq. 406 [9 A.2d 311, 321]; see *Morgan* v. *Commissioner*, 309 U.S. 78 [84 L.Ed. 585, 60 S.Ct. 424].)

■ Adverting to the present case we observe that it is not disputed that Conroy had the authority to release the general power of appointment over the assets of the Anderson trust and to release such power in such manner as to reduce or limit the persons or objects, or classes of

---

[3]Civil Code section 1380.1 provides: "Except to the extent that common law rules governing powers of appointment are modified by statute, the common law as to powers of appointment is the law of this state."

persons or objects, in whose favor such power would otherwise be exercisable.[4] It is also undisputed that the release by Conroy had the effect of transmuting the general power of appointment given Conroy by Anderson into a limited power of appointment. The crucial question presented is whether exercise by Conroy of the limited power of appointment rendered the assets of the Anderson trust subject to California inheritance tax pursuant to the provisions of section 13695.

A similar fact situation was presented in *Estate of Moore,* 29 Cal.App.3d 481 [105 Cal.Rptr. 568]. In *Moore,* Claus Spreckels created an irrevocable *inter vivos* trust on May 4, 1928. His wife, Ellis M. Spreckels, was the beneficiary of one-quarter of the income and was given a power to appoint by will one-quarter of the principal. Claus Spreckels died on January 12, 1935. By December 24, 1942, Ellis Spreckels had remarried; her husband was E. Clarence Moore. On December 24, 1942, Ellis (Spreckels) Moore executed an agreement by which she relinquished her right to appoint the one-quarter interest in the trust assets except to one or more persons who were designated as her spouse, the descendants of her spouse, the descendants of Claus Spreckels, and the spouses of any such descendants. Ellis (Spreckels) Moore died on October 26, 1967. In her last will she declared that she was exercising her power of appointment in favor of her surviving children and per stirpes to the surviving issue of any child who might predecease her.

In *Moore* taxability was sought to be imposed upon a four-sixteenths interest in the Spreckels trust upon the basis that the 1942 agreement was a release of the general power of appointment within the meaning of section 13697 making taxable property which for such release would be taxable under section 13696 providing for taxability of property subject

---

[4]At the time the instant release agreement was executed in 1947, former section 1060 of the Civil Code read in part as follows:

"1. Any power, which is exercisable by deed, by will, by deed or will, or otherwise, whether general or special, other than a power in trust which is imperative, is releasable, either with or without consideration, by written instrument signed by the donee and delivered as hereinafter provided unless the instrument creating the power provides otherwise.

"2. A power which is releasable may be released with respect to the whole or any part of the property subject to such power and may also be released in such manner as to reduce or limit the persons or objects, or classes of persons or objects, in whose favor such powers would otherwise be exercisable. No release of a power shall be deemed to make imperative a power which was not imperative prior to such release, unless the instrument of release expressly so provides. . . ."

(Stats. 1945, ch. 318, § 1, pp. 777-778, repealed Stats. 1969, ch. 155, § 2, p. 409, superseded by Civ. Code, § 1388.2.)

to a general power whether exercised or not exercised. (29 Cal.App.3d at p. 486.)[5] The Controller argued that although the 1942 agreement was a transfer, the transfer was incomplete because the ultimate beneficiaries were not known until the death of Ellis Moore and therefore a taxable transfer took place at the time of her death. The reviewing court rejected this argument upon the ground that Mrs. Moore did not have a general power of appointment at the time of her death but a limited power of appointment created by the 1942 agreement and that therefore section 13696 was not applicable. The court noted that section 13696 makes taxable the exercise or the nonexercise of a general power of appointment possessed by a decedent at the time of his or her death. The court also observed that section 13697 was enacted in 1965 and that because Mrs. Moore released the general power before 1965, the release was not taxable as to do so would give section 13697 retroactive effect. Thus, the court concluded that the appointed property was not taxable under sections 13696 and 13697. (29 Cal.App.3d at p. 492.)

The Controller in *Moore* explicitly disavowed any claim that the trust interest was taxable under section 13695. (29 Cal.App.3d at p. 487.) The appellate court indicated, in a lengthy footnote, however, that the appointed property might arguably be taxable under section 13695. (At p. 487, fn. 4.) In this case the Controller urges that under a very similar fact situation as that presented in *Moore* we should determine that the appointed property is subject to tax under section 13695. In support of his position he adopts much of the reasoning utilized in *Moore* in footnote 4. The thrust of the rationale in said footnote is that it might reasonably be argued that the power of appointment, general by its creation but made limited by the act of the donee of the power, was " 'a limited power of appointment given in conjunction with a disposition of property effected before 5 p.m. of June 25, 1935, by a donor who dies prior to that date . . . exercised after that date by the donee' " so as to make its exercise a taxable transfer under section 13695. (29 Cal.App.3d at p. 487, fn. 4.)

---

[5]Section 13696, in pertinent part, reads: "If at the time of his death a decedent has a general power of appointment with respect to property, the exercise of the power is subject to this part as a transfer of the property from the decedent to the person to whom the property is appointed and the decedent's failure to exercise the power is subject to this part as a transfer of the property from the decedent to the person to whom the property passes by virtue of the nonexercise of the power. . . ."

Section 13697, in pertinent part, reads: "The exercise or release by the decedent during his lifetime of a power with respect to property which, but for such exercise or release would be subject to tax by virtue of the preceding section [§ 13696], is a transfer subject to this part if the exercise or release is of such a nature that if it were a transfer of property owned by the decedent such transfer would be subject to this part . . . ."

A review of the legislative history relative to the taxation of property subject to general or limited powers of appointment discloses that from 1917 to 1935 California followed the method whereby the exercise of a power of appointment or the failure or omission to exercise such power within the time provided, effective at the time of such failure or omission, was deemed to be a taxable transfer as though the property to which such appointment related belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will. (Stats. 1917, ch. 589, § 2(6), pp. 882-883.)

In 1935 the "Inheritance Tax Act of 1935" was adopted, effective June 25, 1935. (Stats. 1935, ch. 358.) With respect to powers of appointment it provided that such a power was to be deemed a taxable transfer from the donor of said power to the donee thereof at the date of the donor's death; provided that where the donor died prior to June 25, 1935, and the power was exercised thereafter, the exercise of such power was to be deemed a transfer taxable as provided in subdivision 6 of section 2 of the Inheritance Tax Act of 1921 as amended in 1929. (Stats. 1935, ch. 358, § 2(6), p. 1269.) Subdivision 6 of section 2 of the Inheritance Tax Act of 1921 as amended in 1929, provided that the exercise of a power of appointment shall be deemed to be a taxable transfer in the same manner as though the property to which the appointment related belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will. (Stats. 1929, ch. 844, § 2(6), pp. 1836-1837.)

In 1943 the Legislature added sections 13301 to 16652, inclusive, dealing with inheritance tax, to the Revenue and Taxation Code. (Stats. 1943, ch. 658.) Section 13693 provided as follows: "Where a general or limited power of appointment given in conjunction with a disposition of property effected before 5 p.m. of June 25, 1935, by a donor who died prior to that date, is exercised after that date by the donee, the exercise of the power is a transfer subject to this part from the donee to the person appointed at the time of the exercise, as though the property to which the power relates belonged absolutely to the donee and is transferred by him by will." (Stats. 1943, ch. 658, § 1, p. 2303.)

In 1965 former section 13693 was repealed and sections 13694, 13695 and 13696 were enacted. (Stats. 1965, ch. 1070, § 6.) Section 13694 provides, essentially, that, except as otherwise provided, a gift of a general or limited power of appointment made in conjunction with a disposition of property effected before or after 5 p.m. of June 25, 1935, is

a taxable transfer from the donor to the donee at the time of the donor's death.

Section 13695 deals with limited powers of appointment given in conjunction with a disposition of property effected before 5 p.m. of June 25, 1935, by a donor who died prior to that date but which powers were exercised by the donee after that date. The statute provides that in such a case the exercise of the power is a taxable transfer from the donee to the person appointed at the time of the exercise as though the property to which the power relates belonged absolutely to the donee and is transferred to him by will. Accordingly, the statute retains the language of former section 13693 to the effect that only the exercise of such power is deemed to be a taxable transfer. Accordingly, such a limited power of appointment is not taxed at the time of its creation, but is only taxed at the time of its exercise. (See *Estate of Dobbins,* 258 Cal.App.2d 262, 271 [65 Cal.Rptr. 704]; Cal. Inheritance Tax Practice (Cont.Ed.Bar 1973) §§ 5.47 and 5.49.)

Section 13696 provides that if at the time of his death a decedent has a general power of appointment with respect to property, the exercise or nonexercise of the power is taxed as if the property to be appointed is transferred from the donee to the appointees or the takers in default.

It is apparent from the foregoing legislative history that immediately prior to the 1965 legislation all powers of appointment were taxable in the estate of the donor as a transfer to the donee excepting as to powers created prior to June 25, 1935, by a donor who died prior to that date. In those cases involving general or special powers created before the 1935 cutoff date the exercise of these powers by a donee dying after that date subjected the powers to taxation in the estate of the donee, but where such powers were not exercised the property passed free of tax to the takers in default. The 1965 legislation resulted in a revision of the law applicable to the taxation of powers of appointment by the enactment of sections 13694, 13695 and 13696.

Adverting to section 13694, we observe that it alters the previous rule in that a general or special power of appointment is taxed as a transfer of the appointed property from the donor to the donee at the date of the donor's death whether such powers are effected prior to or after 5 p.m. on June 25, 1935, and irrespective of whether the donor dies before or after that date. We are not concerned here with section 13694 because it deals with a transfer from the donor to the donee and not with a transfer

from the donee to his appointee or appointees as is the case in the instant proceeding.

As respects section 13696, we observe that it alters the previous rule in that a general power of appointment with respect to property is taxed as a transfer of the property from the donee at the time of his death whether the power is exercised or not and irrespective of whether the donor died before or after 5 p.m. on June 25, 1935. We are not here concerned with this statute because it specifically applies only to a general power of appointment.

Our concern is with respect to section 13695 which deals specifically with special or limited powers of appointment. In interpreting this statute we observe that there is no statutory provision providing for the taxing of the exercise or nonexercise by a donee of a special or limited power of appointment except as provided in section 13695. This statute applies solely to the exercise after 5 p.m. of June 5, 1935, of a limited power of appointment "given in conjunction with a disposition of property effected before 5 p.m. of June 25, 1935, by a donor who died prior to that date, . . ." In the instant case Anderson, the donor, died prior to that date and Conroy, the donee, exercised a limited power of appointment after that date. However, the power of appointment given in conjunction with the disposition of property before that date was a general power of appointment and not a limited power.

The Controller contends that the limited power of appointment exercised by Conroy was a limited power of appointment "given in conjunction with a disposition of property effected before 5 p.m. of June 25, 1935" by a donor who died prior to that date and that the exercise of that power by Conroy resulted in a taxable transfer pursuant to the provisions of section 13695.

We are thus called upon to interpret the meaning of section 13695 and to determine whether it is restricted to a limited power of appointment given in conjunction with the disposition of property prior to the 1935 cutoff date or whether it is also applicable to a limited power deriving from a general power given before said date by a donor who died before that date.

It is asserted by the Controller that the 1965 legislation reveals no intent to forgive inheritance taxes. He argues that, because since 1935 and prior to 1965 property appointed under a power given prior to June

25, 1935, by a donor who died prior to that date, which was general in its creation, but made limited after the death of the donor by the voluntary act of the donee, resulted in a taxable transfer from the donee, there was no intent on the part of the Legislature in 1965 to free such property from taxation.

In interpreting section 13695 we are not unmindful of the rule that laws imposing taxes are *in invitum* and are to be strictly construed in favor of the taxpayer (*Barker Bros., Inc.* v. *Los Angeles,* 10 Cal.2d 603, 608 [76 P.2d 97]) and of the rule that " 'A tax can never be extended by construction to things not named or described in the statute as the subject of taxation.' " (*County of Los Angeles* v. *Jones,* 13 Cal.2d 554, 562 [90 P.2d 802].) We also take cognizance of the principle that a revenue or taxation statute is to be construed so as to give effect to the intention of the Legislature, with a view to effecting its objects and to promote justice, and its interpretation in all cases must be reasonable. (*Estate of Parrott,* 199 Cal. 107, 112-113 [248 P. 248]; see *Estate of Rath,* 10 Cal.2d 399, 406 [75 P.2d 509, 115 A.L.R. 836]; *Golden Gate Bridge etc. Dist.* v. *Felt,* 214 Cal. 308, 327 [5 P.2d 585].)

We are not persuaded that the intent of the Legislature with respect to section 13695 may be gleaned from the legislative history of the inheritance tax statutes in view of the several amendments and revisions of the statutes that are indicative of changes in the attitude of the Legislature with respect to the taxation of powers of appointment. In view of the established principle that the Legislature has the right to determine whether or not transfers through the means of power of appointment may be the subject of inheritance taxes (*Estate of Elston,* 32 Cal.App.2d 652, 660 [90 P.2d 608]), the Legislature, in its wisdom, could, but did not, elect to free from taxation the property appointed under the power as exercised in the present case.

The interpretation of section 13695, in our view, rests upon the meaning of its language in accordance with applicable legal principles rather than upon legislative history. We apprehend, therefore, that upon the basis of such interpretation we shall be able to ascertain the legislative intent.

The Controller argues that the limited power of appointment exercised by Conroy was created when she received the general power of appointment over the Anderson trust and that, accordingly, the limited power was "given in conjunction with a disposition of property effected

before 5 p.m. of June 25, 1935." The thrust of the Controller's argument is that the partial release of the general power in 1947 by Conroy is a modification of a preexisting right and that the greater (the general power) includes the lesser (the limited power). Thus, the Controller is contending that the partial release did not create something new but was tantamount to a modification of a preexisting right.

We are persuaded that there is merit to the Controller's argument. In *Moore,* it was pointed out that a donee of a power of appointment cannot give the power to himself or herself, but that the power is given by the donor at the time of the creation of the trust, that although the power when given is a general power it includes in the gift whatever the general power contains, and that the lesser limited power is included in a general power. (29 Cal.App.3d 481, 488, fn. 4.)

The rationale articulated by *Moore* and espoused by the Controller necessarily follows from the very nature of a power of appointment. As already noted such a power is not created by the donee of the power but by a person in whom the property is vested other than the donee. Accordingly, where the donee releases a general power by reducing it to a limited power he is modifying an existing right which was created by the donor because without the creation of the power by the donor there would be no power which could be released.

We observe that Civil Code section 1060 as it read at the time Conroy executed the release agreement in 1947 (see fn. 4, *ante*) specifically provided that a general power was releasable and that such power could be released in such manner as to reduce or limit the persons or classes of persons in whose favor the power would otherwise be exercisable. In sum, the statute contemplates a partial release. "Release" is defined in Black's Law Dictionary (4th ed.) as "The relinquishment, concession, or giving up of a right, claim, or privilege, by the person in whom it exists or to whom it accrues, to the person against whom it might have been demanded or enforced." Accordingly, a partial release is the giving up of a part of a right which the person exercising the release already has. With respect to the instant case the preexisting and severable right was originally granted to Conroy by Anderson in 1934 and was given in conjunction with the disposition of property made at that time.[6]

---

[6]In 1A Nossaman & Wyatt, Trust Administration and Taxation, it is stated that ". . . Part of the power itself [i.e., the power of appointment] may be released, *converting* a general into a special power." (Italics added; § 36.09, p. 36-28.)

We therefore conclude that the limited power was not *created* by Conroy's act in releasing the general power in 1947, but that it was, in essence, created by Anderson in 1934. Conroy's act reducing her general power into a limited power in 1947 did not create the limited power but was a *conversion* of the general power into a special or limited power.

Accordingly, the limited power could only have been one given in conjunction with a disposition of property effected prior to the June 25, 1935, cutoff date. The disposition of the property in conjunction with which both the general power and the special power from which it was derived is the transfer of the property in trust from Anderson to Conroy and not the exercise of the release by Conroy which resulted in the conversion of the general power into a special power.

We conclude, therefore, that the exercise of the limited power deriving from the general power given is taxable under section 13695.

The order of the trial court fixing the inheritance tax is reversed with directions to enter an order sustaining and confirming the original report of inheritance tax appraiser dated May 10, 1974.[7]

Sims, J., and Elkington, J., concurred.

---

[7]The inheritance tax referee in his original report of May 10, 1974, included the assets of the Anderson trust as taxable property. The trial court sustained the objections of the executor to the report and thereafter the referee filed an amended report which did not include such assets as taxable property. The amended report as approved by the trial court is the order from which the Controller has appealed.