[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 68 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 69 
OPINION
The Controller appeals from a judgment of the superior court, contending that the trial court erred in determining the nature of interests in certain real and personal property conveyed by decedent, Seth McKenna, to his sisters, Mary Parvin and Emma Eugenia McKenna. Specifically, the Controller asserts that Seth McKenna's will conveyed life estates coupled with general powers of appointment to each of his two sisters. The respondent estate contends that Seth McKenna's will conveyed life estates only. The determination of the nature of the interests devised to each of the sisters will affect the future calculation of inheritance taxes in their estates.
By a will dated July 11, 1973, Seth McKenna made a bequest to his sisters. Paragraph THIRD of the will provides in pertinent part as follows:
"I give all my right, title and interest to the properties and interests therein described in this Paragraph A in equal shares to my sisters, MARY McKENNA PARVIN . . . and EMMA EUGENIA McKENNA . . . for life, with power to enjoy the use and maintenance and income thereof, after payment of taxes and other expenses in connection therewith, and with power to sell the same and enjoy the proceeds thereof provided that the done also is willing to sell her own interest therein in a similar manner and for an equivalent price. If one of my said sisters should die leaving the other surviving, I leave all of her remaining interest to such surviving sister for life. I further direct that upon the death of both of my said sisters, or in the event that neither of them shall survive me for a period of one hundred twenty (120) days, then that share or any portion of my estate that is then remaining, or the proceeds thereof, shall be given to my nephew, EDWARD PARVIN, presently living in the Los Gatos, California, area. [¶] (It is my intention in this Paragraph A to create an interest similar to that held to be a life estate in Lewis v.Flournoy (1969) 76 Cal.Rptr. 289.)" *Page 70 
While Seth McKenna's estate was in probate, Emma Eugenia McKenna died. Edward Parvin, remainderman and administrator of the will annexed of Seth McKenna's estate, filed a petition for determination of entitlement to distribution (Prob. Code, § 1080). The petition specified that:
"An uncertainty exists among the devisees and legatees of the will, as to whether MARY PARVIN and EUGENIA McKENNA were devised a mere life estate or a life estate with a general power of appointment or some other interest in the property described in the THIRD clause of the Will of SETH McKENNA, on file with this Court.
"Petitioner is the named remainderman in the Will of SETH McKENNA, deceased. Petitioner is also the Executor and a legatee of the Estate of EUGENIA McKENNA, now deceased, and being probated in this Court under file No. 96127, and petitioner would take title to her possible interest in said property in trust for the benefit of his children, pursuant to the terms of her Will if such interest is subject to the terms of her Will. MARY PARVIN, sister of decedent SETH McKENNA, is a widow and the mother of petitioner, her only child."
The petition prayed that the court determine the nature of the interests conveyed to Mary Parvin, the estate of Eugenia McKenna and Edward N. Parvin by Seth McKenna's will. The Controller appeared in the Probate Code section 1080 declaratory proceeding, expressing the belief that "the subject petition was filed for the sole purpose of affecting the inheritance tax in the estate of Emma Eugenia McKenna. . . ."
The superior court found that Seth McKenna intended to convey and did convey "a life estate coupled with a limited power of sale" with a remainder in fee simple absolute to E.N. Parvin. Further, the court specifically decreed that Seth McKenna did not convey powers of appointment or fee interests to Mary Parvin or Emma Eugenia McKenna.
We disagree with the judgment below; however, we do not agree entirely with the Controller's position. We find that Seth McKenna intended to convey and did convey life estates coupled with powers of appointment to his sisters, Mary Parvin and Eugenia McKenna, but we find that the powers of appointment were limited, not general.
(1) No extrinsic evidence was introduced in the superior court. The interpretation of the will is thus one of law not of fact (Estate of Armstrong *Page 71 
(1961) 56 Cal.2d 796, 801 [17 Cal.Rptr. 138, 366 P.2d 490]), and we are not bound by the lower court's construction. (Estate ofRussell (1968) 69 Cal.2d 200, 213 [70 Cal.Rptr. 561,444 P.2d 353]; Estate of Meyer (1966) 241 Cal.App.2d 747, 751 [51 Cal.Rptr. 72]; Estate of Logan (1978) 84 Cal.App.3d 717, 722 [148 Cal.Rptr. 819].) We must construe the will, insofar as possible, to give effect to the testator's intention. (Prob. Code, § 101; Estate of Russell, supra, at p. 205; Estate ofArmstrong, supra, at p. 803.) The "intention" is that expressed in the will itself. (Estate of Cummings (1968) 263 Cal.App.2d 661, 668 [69 Cal.Rptr. 792].) Still, if the probate court's interpretation is reasonable and consistent with the testator's intention, the construction below should be affirmed. (Estate ofCummings, supra, at p. 667.)
(2) For inheritance tax purposes, a power to invade or consume the corpus of an estate is a power of appointment. (Estate of Cohen (1971) 4 Cal.3d 41, 49-50 [92 Cal.Rptr. 684,480 P.2d 300]; Estate of Morse (1970) 9 Cal.App.3d 411, 415-416 [88 Cal.Rptr. 52].)[1] The relevant provisions of the Revenue and Taxation Code are sections 13692 and 13693:[2]
Section 13692 provides as follows: "`General power of appointment'" means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate, provided that the following shall not be deemed to be general powers of appointment:
(3) (See fn. 3.) "(a) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent.[3] *Page 72 
"(b) A power not exercisable by the decedent except in conjunction with the creator of the power.
"(c) A power not exercisable by the decedent except in conjunction with a person having a substantial interest in the property subject to the power, which is adverse to exercise of the power in favor of the decedent. For the purposes of this subsection a person who, after the death of the decedent, may be possessed of a power of appointment (with respect to the property subject to the decedent's power) which he may exercise in his own favor shall be deemed as having an interest in the property and such interest shall be deemed adverse to such exercise of the decedent's power.
"If the power is exercisable by the decedent only in conjunction with another person and if after the application of subdivisions (b) and (c) the power is a general power of appointment and is exercisable in favor of such other person, such power shall be deemed a general power of appointment only in respect of a fractional part of the property subject to such power, such part to be determined by dividing the value of such property by the number of such persons (including the decedent) in favor of whom such power is exercisable.
"For purposes of subdivisions (b) and (c) of this section, a power shall be deemed to be exercisable in favor of a person if it is exercisable in favor of such person, his estate, his creditors or the creditors of his estate."
Section 13693 provides as follows:
"`Limited power of appointment' means a power which does not qualify under the preceding section as a general power of appointment."
(4) The present tax scheme applicable to powers of appointment treats the creation of either a general or a limited power of appointment as a taxable transfer from the donor-decedent to the donee. (Rev. Tax. Code, § 13694, added by Stats. 1965.) Thus, for purposes of inheritance *Page 73 
tax calculation in the Seth McKenna estate, designation of the power as general or limited is of no consequence. However, either the exercise or nonexercise of a general power is taxable again in a donee-decedent's estate (§ 13696, added by Stats. 1965), while the exercise or nonexercise of a limited power may not be taxed in a donee's estate (§ 13695, added by Stats. 1965).[4]
Central to both parties' arguments concerning the power of appointments is In re Lewis (1969) 271 Cal.App.2d 371
[76 Cal.Rptr. 289], the case referred to in Seth McKenna's will as"Lewis v. Flournoy." The pertinent dispositive provision in that case said "`SECOND: — I hereby give, devise and bequeath to my beloved wife, Ada Fannie Lewis, all the property of my estate, both real and personal, of whatsoever kind or character, and wheresoever situated, for her use and maintenance, with full power to sell any or all of said property as she may see fit; and I further direct that upon her death any of my estate that is then remaining shall be divided equally, share and share alike, among my six children, to-wit: — George Benton Lewis, Frank Read Lewis, James Raymond Lewis, Thomas Ralph Lewis, Anna Irene Lewis, and John Edwin Lewis.'" (At p. 373.)
Respondent first argues that the Lewis will created only a life estate. We disagree. The issue in Lewis was whether the decree of distribution in a prior estate (that of Thomas Benton Lewis, husband of decedent Ada Lewis) had incorporated Thomas Benton Lewis' will by reference. If it had not, the Controller and Ada Lewis' estate agreed that the assets of her husband had been conveyed to Ada Lewis in fee simple. If, on the other hand, the prior decree had incorporated the prior will, the parties stipulated that the assets were conveyed to Ada Lewis as a life estate with a limited power to consume. (Lewis, supra, at p. 374.)
In a reference to the Thomas Lewis bequest, the Lewis court commented: "It is well settled that a bequest or devise to a surviving spouse in general terms, without stating whether it is a fee or life estate, with broad powers of enjoyment or disposition, but with a gift over to subsequent takers of what remains on the death of the survivor, should be construed to create a life estate and not a fee in the survivor. (Colburn v.Burlingame [1923] 190 Cal. 697, 702 . . .; King v. Hawley
[1952] *Page 74 113 Cal.App.2d 534, 538-549 . . .; 31 Cal.Jur.2d Life Estates, § 10, p. 318.)" (Lewis, supra, at p. 377.) Respondent stresses the fact that the Lewis court made no reference to the power of consumption. As the Controller points out, however, the existence or nonexistence of the power apparently had no tax consequences in the case. Ada Lewis died February 21, 1965, prior to the enactment of the present section 13696 which taxes the unexercised general power of appointment upon a donee's death. Moreover, we agree with the Controller that the reference to "broad powers of enjoyment or disposition" by the Lewis court is a reference to the power of consumption stipulated to by the parties. The court's references to the Colburn and King cases support this conclusion.[5]
Moreover, Lewis was relied upon more recently in Morse,supra, 9 Cal.App.3d 411, 417, in support of that court's holding that the decedent had granted his wife a life estate and a general power of *Page 75 
appointment.[6] In Morse, the decedent left his wife the entire estate after two small bequests and directed that upon her death one-half of the estate "remaining, if any" (at p. 414) should go to their son. Respondent argues that "remaining, if any" is vastly different from the language used in the Lewis
will and from the language used by Seth McKenna ("any portion of my estate that is then remaining, or the proceeds thereof"). The Controller argues with equal force that the language is identical. Even if it were plain (which it is not) that theMorse court was quoting from the decedent's will in that case, we would decline to rest our interpretation of Seth McKenna's gift to the sisters solely on this one phrase. (5) "No particular form of words is necessary to create a power of appointment." (Estate of Rosecrans (1971) 4 Cal.3d 34, 38 [92 Cal.Rptr. 680, 480 P.2d 296].) The object of the inheritance tax law "`is to include in a decedent's estate, regardless of . . . gossamer distinctions . . . about powers, special powers, powers in trust, and the like, all economic value which a decedent was in a position to divert to his own use if he desired.'" (Estateof Nunn (1974) 10 Cal.3d 799, 809 [112 Cal.Rptr. 199,518 P.2d 1151].)[7]
Respondent argues further, however, that even if the language in Lewis created a life estate and a power to consume, still, Seth McKenna intended to create a life estate only. Respondent interprets the reference to Lewis as an indication that McKenna thought Lewis created only a simple life estate, and contends that this interpretation is reinforced by the reference in the will to "payment of taxes and other expenses" which might well reduce the corpus, leaving an estate "remaining." Again, we disagree.
It may well be that Seth McKenna's intention was to avoid subsequent inheritance tax on the gift to his sisters. And, arguably, it may be *Page 76 
that he thought he was accomplishing this by the provision and the reference to Lewis.[8] To adopt respondent's interpretation, however, would require us to rewrite the will beyond its plain meaning. The estate in Lewis was a life estate coupled with a power in the donee to consume (during her lifetime), not a fee simple. (6) Read in its entirety, the provision here plainly gives the sisters a power of consumption of the corpus of their life estates in that they were given a power to sell the corpus and "enjoy the proceeds thereof" in addition to the life estate in the corpus that had been bequeathed to them.[9] Then, after both sisters are deceased, "any portion . . . that is then remaining" is given to Parvin in fee simple absolute. The language obviously assumes that there might not be an estate or proceeds remaining and thus confirms our view that the testator intended to give the sisters a power to consume the corpus.
Our inquiry, however, does not end there. Having determined that each sister received a power of appointment over her life estate, we must additionally determine whether the powers were general or limited. If they were limited, their exercise or nonexercise is not taxable in the sisters' estates.
Most of the case law dealing with limited powers of appointment deals with whether or not a testator successfully set "an ascertainable *Page 77 
standard relating to the health, education, support or maintenance" of the donee. (Rev. Tax. Code, § 13692, subd. (a); see, e.g., Cory v. Ward (1980) 106 Cal.App.3d 631
[165 Cal.Rptr. 330]; Estate of Allgeyer (1976) 60 Cal.App.3d 169
[129 Cal.Rptr. 820]; Estate of Nunn, supra, 10 Cal.3d 799.) There do not appear to be any California cases relating to section 13692, subdivision (c), but that section appears to be determinative here.
The will in the case at bar gives a life estate and, as we have noted, a power of consumption to each sister. But the exercise of the power is limited in that one sister could not exercise it unless the other sister also exercised her power on the same terms with respect to her share. The will further provided that if one sister died, leaving the other sister surviving, then the surviving sister took the "remaining interest" of the decedent sister. Thus, the interest of each sister in the other sister's share of the Seth McKenna estate was adverse to the exercise of the power given each sister to consume her own share. The reason is clear. If a sister exercises her power to consume her share of the corpus, to that extent it diminishes the estate the other sister might have acquired should the former have predeceased the latter.
Our views are buttressed, we believe, by relevant federal regulations.[10] "The manifest purpose of the 1965 revision was to conform state inheritance tax treatment of powers with the federal estate tax treatment and, consequently, we accord great weight to applicable federal administrative regulations and decisional law." (Estate of Nunn, supra, 10 Cal.3d at pp. 805-806.)
We conclude that within the meaning of section 13692, subdivision (c) and section 13693 the will created a life estate with a limited power of appointment in each sister.
The judgment is reversed, and the cause is remanded to the trial court with directions to proceed in accordance with the views expressed herein.
Scott, Acting P.J., and Barry-Deal, J., concurred.
Appellant's petition for a hearing by the Supreme Court was denied June 17, 1981.
[1] One of the purposes of the 1965 California legislative amendments to the state's inheritance tax law was to conform the taxation of powers of appointment under California law to the practice under federal estate tax laws. (Estate of Cohen,supra, 4 Cal.3d at p. 49.) Treasury regulation section 20.2041-1(b)(1) provides: "The term `power of appointment' includes all powers which are in substance and effect powers ofappointment regardless of the nomenclature used in creating thepower and regardless of local property law connotations. For example, if a trust instrument provides that the beneficiary may appropriate or consume the principal of the trust, the power toconsume or appropriate is a power of appointment." (26 C.F.R. § 20.2041-1(b)(1), italics added; see Estate of Cohen, supra,
4 Cal. 3d at pp. 49-50.)
[2] All citations are to the Revenue and Taxation Code unless otherwise indicated.
[3] "Decedent" in this section, plainly, includes "donee."
"We reach this conclusion notwithstanding the fact that section 13692 defines a general power of appointment as one exercisable in favor of the decedent, among others, and section 13305 defines decedent as including, among others, a donor rather than a donee. But section 13302 provides that this definition of decedent does not govern `where the context otherwise requires,' and a reading of the remaining two subdivisions of section 13692 demonstrates that in their context the word decedent can refer only to the donee of a power of appointment. We do not believe that the Legislature would have used the word decedent within the same section in two different senses without plainly indicating that it was doing so." (Estate of Morse, supra, 9 Cal.App.3d at p. 415, fn. 2.)
[4] There is one exception but it is not relevant here. In the years preceding the 1965 amendments, powers of appointment were taxed by a variety of methods in California. An excellent summary of the legislative history is set forth in Estate of Conroy
(1977) 67 Cal.App.3d 734, 742-743 [136 Cal.Rptr. 807].
[5] Thus, for example, in King v. Hawley, the language "`I devise and bequeath all my property to my sister, Mrs. Ida M. Graves of Stockton, California, and request that she be appointed sole executrix of my will, and that she may not be compelled to give any bond or security as such executrix, and that she may settle the estate in her own way and sell any or all of the real or personal estate at public or private sale as she may think best, and that she may use all the proceeds of my estate for her comfort and support; but that whatever may be left of my estate at her death shall go to James Woodward King of Sacramento, California, and to his heirs'" (at p. 535) created a life estate and a power of appointment in Ida Graves. "[I]n the exercise of the power of consumption, use and disposition, she was limited to the purpose for which the property was given to her, that is, her use and consumption for her comfort and support, and that she could not give the property away during her lifetime nor will it away at her death." (At pp. 537-538.)
In Colburn v. Burlingame, similarly, the decedent left property to his wife as follows: "`I Give, Devise and Bequeath to My beloved Wife Leora I. Colburn the entire handling and control of any and all of of my real estate and any and all [of] my personal property of any and every name nature or kind — wheresoever situate — To have and to hold, occupy or use the whole or any part thereof in such Manner as may in her judgment seem best for her own individual benefit and support without any hindrance on the part of any person or persons wholly confiding in and believing my beloved wife will not allow said property to depreciate or go to waste.'
". . . . . . . . . . . . . . . . . .
"`It is my wish and will and I do so direct that in case of the decease of my mother Mrs. Eliza A. Colburn and the mother of my beloved wife Mrs. P.M. Westbrook and my beloved wife Leora I. Colburn shall yet be living, then and in such case I Give, Devise and Bequeath any and all my real estate and any and all personal property of any and every name nature or kind wheresoever situate at the time of the decease of my beloved wife Leora I. Colburn. To my Brothers then living and to my beloved wife's sister Mrs. Dora L. Nehrbass jointly and severally the remainder of my estate Share and Share alike.'" (At pp. 698-699.)
The wife was held to hold a life estate and a power to consume the principal of the estate, and "at her death the remainder, that is, the part of the estate unconsumed by her" would go to the testator's brothers and sister-in-law. (At p. 700.)
[6] Respondent argues that, because the question of the power of appointment was not precisely at issue in Morse, it cannot be considered as authority for a determination of when such a power exists. We disagree, as apparently the Supreme Court did when it relied on Morse in Estate of Cohen, supra, 4 Cal.3d at pages 50-51.
[7] For example, in Estate of Smythe (1955) 132 Cal.App.2d 343, 345 [282 P.2d 141], the will said: "`All that I possess I give and bequeath to this same RUTH SMYTH for her during her life time, as she may need or see fit to use. If, upon her death, any of my estate remains, it is my will that such remainder be divided equally through her will between PACIFIC HOME a California Corporation in Los Angeles, where I now reside, and the Church of the Messiah, of which I am now a Member.'" This was found to be a life estate with a power to consume. In Hardy v.Mayhew (1910) 158 Cal. 95 [110 P. 113], the decree distributed property to Mayhew "for his use, during his natural life, and on his death the unused portion of said sum to" children and grandchildren. Again, this was a life estate with a power. (At pp. 99-103.)
[8] One could argue, likely with more authority, that Seth McKenna in fact was making it absolutely plain that he wanted his sisters to have something more than a simple life estate, but less than a fee.
Powers of consumption are often coupled with creation of life estates or with the creation of a trust wherein the donee, as a trustee, has a general power to invade the corpus and appoint to the beneficiary. And the nature and extent of the power varies from case to case. "[A] general power of appointment may be so unlimited as to give its holder rights equivalent to absolute ownership." (Estate of Rosecrans (1971) 4 Cal.3d 34, 40 [92 Cal.Rptr. 680, 480 P.2d 296].) But that is not always so. For example, a donee may hold a general power (i.e., the power to appoint to himself) but still not have the power to appoint the remainder at his death or give away the property during his lifetime. (See, e.g., King v. Hawley, supra, 113 Cal.App.2d 534, 537-538; Estate of Nunn, supra, 10 Cal.3d 799, 809;Hardy v. Mayhew, supra, 158 Cal. 95, 100.) Revenue and Taxation Code section 13692 is explicit that so long as the donee is one of the permissible appointees, the power is a general one unless it falls within one of the three limiting exceptions. The life tenant donee of a general power of appointment is still liable to a remainderman (where the donor named one), as any life tenant would be, to exercise his rights of use and consumption with due regard for the rights of the remainderman. (King v. Hawley,supra, at p. 538.) The power to convey the corpus to oneself does not convert a life estate into a fee. (Estate of Legatos (1969)1 Cal.App.3d 657, 660 [81 Cal.Rptr. 910].)
[9] The Controller concedes in his opening brief that the language "with power to sell the same and enjoy the proceeds thereof" is simply a power of sale. As is obvious from our discussion, we doubt that the concession was warranted.
[10] See 26 Code of Federal Regulations, section 20.2041-3(c) (1980). *Page 78